727 S.E.2d 658

Joe E. MILLER, Commissioner, West Virginia Department of Transportation, Division of Motor Vehicles, Petitioner

v.

Michael CHENOWETH, Respondent.

No. 11–0148.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2012.

Decided May 10, 2012.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Elaine L. Skorich, Assistant Attorney General, Charleston, WV, for Petitioner.

George J. Cosenza, Parkersburg, WV, for Respondent.

PER CURIAM:

This appeal by Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter referred to as "Commissioner Miller"), the petitioner herein, challenges a circuit court finding that a law enforcement officer conducted an illegal stop of a driver suspected of driving under the influence of alcohol, and the circuit court's application of the exclusionary rule to an administrative driver's license revocation proceeding. Because we conclude that there was no illegal stop, we reverse the circuit court's order without reaching the issue pertaining to the exclusionary rule.

### I.

### FACTUAL AND PROCEDURAL HISTORY

According to the appendix record submitted in connection with this appeal, during the early morning hours of May 7, 2009, Mr. Michael S. Chenoweth (hereinafter referred to as "Mr. Chenoweth"), the respondent herein, was driving his vehicle, a 1991 Mercury Grand Marquis, south on Emerson Avenue in Parkersburg, West Virginia. He made a right-hand turn onto West Virginia Avenue and then pulled off the road just past an entrance to a Fire Department. During the administrative hearing, Mr. Chenoweth testified that, after he pulled his car off the road, a State Police cruiser came around the corner and stopped in the road near Mr. Chenoweth's car. The cruiser was being operated by Trooper J.S. Pauley of the West Virginia State Police (hereinafter referred to as "Trooper Pauley"). Mr. Chenoweth stated that, after sitting in the roadway for ten or fifteen seconds, Trooper Pauley turned on his emergency lights and pulled his vehicle behind Mr. Chenoweth's car. Mr. Chenoweth was clear that Trooper Pauley did not cause him to pull off the road. Instead, he had already pulled off the road and was checking messages on his phone when Trooper Pauley approached him.

The D.U.I. Information Sheet subsequently completed by Trooper Pauley indicates that he stopped because Mr. Chenoweth's vehicle was parked in such a manner that it

protruded into the roadway. Trooper Pauley then approached Mr. Chenoweth and, while speaking to him, observed the smell of alcohol. In addition, Trooper Pauley noticed that Mr. Chenoweth's eyes were glassy and bloodshot and that his speech was slow. The D.U.I. Information sheet further notes that Mr. Chenoweth was unsteady exiting the vehicle and standing. Trooper Pauley administered a gaze nystagmus test, which Mr. Chenoweth failed. Mr. Chenoweth refused to take either the walk and turn or one-leg stand field sobriety tests. The results of a preliminary breath test administered by Trooper Pauley showed that Mr. Chenoweth had a blood alcohol concentration of .144%. Trooper Pauley then arrested Mr. Chenoweth for driving a motor vehicle in this State while under the influence of alcohol. After transporting Mr. Chenoweth to the Parkersburg Police Department, Trooper Pauley administered a secondary chemical breath test. The secondary test measured Mr. Chenoweth's blood alcohol concentration at .155%.

Thereafter, on May 21, 2009, Commissioner Miller issued an order revoking Mr. Chenoweth's privilege to drive a motor vehicle. The revocation was to become effective on June 25, 2009. Mr. Chenoweth requested an administrative hearing, which was held on January 7, 2010. Mr. Chenoweth did *not* request the presence of Trooper Pauley at the administrative hearing. Following the administrative hearing, the hearing examiner proposed that Commissioner Miller conclude, as a matter of law, that Mr. Chenoweth violated W. Va.Code § 17C–5–2 (2008) (Repl. Vol.2009) by driving a motor vehicle in this State while under the influence of alcohol, and that he did so while having an alcohol concentration in his blood of .15% or more. The hearing examiner noted Mr. Chenoweth's argument that Trooper Pauley did not have any right to conduct a stop; therefore, Mr. Chenoweth's license revocation should be rescinded. Mr. Chenoweth based this argument upon his testimony that he had been

legally parked when Trooper Pauley observed his vehicle on the side of the road. This testimony was contrary to Trooper Pauley's D.U.I. Information Sheet, which noted that Mr. Chenoweth's car was protruding into the roadway. After essentially observing that this conflicting evidence required a credibility determination, the hearing examiner found that the "dispute must be resolved in Trooper Pauley's favor." In addition, the hearing examiner explained that, "[f]rom the Respondent's own testimony, Trooper Pauley never initiated any investigative stop of the Respondent's 1991 Mercury, but approached it only after the Respondent had stopped of his own volition on West Virginia Avenue. . . ." The hearing examiner observed further that, "as the record also reflects, Trooper Pauley found the Respondent's Mercury to be oddly positioned, protruding into the roadway." Commissioner Miller adopted these findings and entered a Final Order revoking Mr. Chenoweth's privilege to drive a motor vehicle for a period of forty-five days commencing July 28, 2010, and thereafter until Mr. Chenoweth fulfilled certain obligations.[1]

Mr. Chenoweth appealed Commissioner Miller's Final Order to the Circuit Court of Wood County. By order entered December 23, 2010, the circuit court reversed and vacated the revocation of Mr. Chenoweth's driver's license based on its finding that Trooper Pauley improperly stopped Mr. Chenoweth's vehicle without an articulable reasonable suspicion. The circuit court applied the exclusionary rule relating to improper and/or illegal stops and this Court's prior analysis requiring the driver to have been "lawfully placed under arrest." [2] In reversing Commissioner Miller's final order, the circuit court reasoned that, based upon the facts that had been presented in this case,

the officer's actions were clearly a stop of the Petitioner's vehicle particularly with

---

1. Because Mr. Chenoweth's blood alcohol concentration was .15%, W. Va.Code § 17C–5A–2(k)(1) (2008) (Repl.Vol.2009) requires that he participate for 270 days in a Motor Vehicle Alcohol Test and Lock Program in accordance with W. Va.Code § 17C–5A–3a (2008) (Repl.Vol. 2009). In addition, Mr. Chenoweth was required

to complete a safety and treatment program. *See* W. Va.Code § 17C–5A–3a(b)(1), and W. Va.Code § 17C–5A–3 (2008) (Repl.Vol.2009).

2. *See Clower v. West Virginia Dep't of Motor Vehicles,* 223 W.Va. 535, 678 S.E.2d 41 (2009).

regard to the fact [of] the time period between when the officer first saw the Petitioner's vehicle and when he activated the emergency lights. Additionally, the record is empty with regard to ... any articulable reasonable suspicion to justify a stop....

... The Court finds and concludes that the officer improperly stopped the Petitioner's vehicle without an articulable reasonable suspicion.

Finally, the circuit court acknowledged that this Court previously has observed that the exclusionary rule[3] relating to improper and/or illegal stops is inapplicable to civil cases,[4] and that "DMV cases, such as the

3. With regard to the exclusionary rule, this Court has explained:

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987). *See Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148 (1990) (Under the exclusionary rule "no evidence seized in violation of the Fourth Amendment [can] be introduced at [a defendant's] trial unless he consents.").
*State v. Flippo*, 212 W.Va. 560, 578 n. 20, 575 S.E.2d 170, 188 n. 20 (2002).

4. The circuit court cited *State ex rel. State Farm Fire and Casualty Co. v. Madden*, in which this Court observed that "[t]raditionally, courts limited the exclusionary sanction to criminal proceedings, refusing to apply it in the civil context." 192 W.Va. 155, 163 n. 10, 451 S.E.2d 721, 729 n. 10 (1994) (internal citations omitted).

5. In reaching this conclusion, the circuit court relied on W. Va.Code § 17C–5A–2(f), which, according to the circuit court, required Commissioner Miller to make a finding that a person was lawfully placed under arrest. It should be noted that the version of W. Va.Code § 17C–5A–2(f) in effect at the time relevant to the instant proceeding, which is the 2008 version, did not contain language that required a specific finding that the person had been either lawfully arrested or lawfully taken into custody:

(f) In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than

present case, are civil proceedings." Nevertheless, the circuit court "decline[d] to extend the inapplicability of the exclusionary rule in civil cases to this case."[5] It is from the circuit court's order that Commissioner Miller now appeals.

## II.

## STANDARD OF REVIEW

This case is before this Court on appeal from a circuit court's order reversing an administrative order rendered by Commissioner Miller. In these circumstances, the role of the circuit court in reviewing an ad-

eight hundredths of one percent, by weight, *the commissioner shall make specific findings as to:* (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) *whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test;* and (3) whether the tests, if any, were administered in accordance with the provisions of this article and article five [§§ 17C–5–1 et seq.] of this chapter.
W. Va.Code § 17C–5A–2(f) (2008) (Repl.Vol. 2009) (emphasis added). Although not applicable to the case at hand, the statute was amended in 2010 and again in 2012, and language requiring a finding that the person was either lawfully arrested or lawfully taken into custody was restored. Our analysis will rely solely on the 2008 version of W. Va.Code § 17C–5A–2(f). The circuit court additionally relied upon this Court's decision in *Clower v. West Virginia Department of Motor Vehicles*, 223 W.Va. 535, 678 S.E.2d 41 (2009). The *Clower* opinion applied the 2004 version of W. Va.Code § 17C–5A–2, which, unlike the version of the statute applicable to the instant case, required a specific finding of "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol ... or was lawfully taken into custody for the purpose of administering a secondary test." W. Va.Code § 17C–5A–2(e) (2004) (Repl.Vol.2004). Therefore, the circuit court's reliance on *Clower* was misplaced.

ministrative order is governed by the Administrative Procedures Act, which directs that:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 29A–5–4(g) (1998) (Repl.Vol. 2007).

In the case *sub judice,* the circuit court reversed the administrative order. With respect to this Court's review of a circuit court's order reversing an administrative order, we have held that:

"[i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*" Syllabus point 2, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. pt. 1, *Clower v. West Virginia Dep't of Motor Vehicles,* 223 W.Va. 535, 678 S.E.2d 41 (2009). Finally, we note that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.,* 191 W.Va. 134, 443 S.E.2d 602 (1994). With due regard for the foregoing standards, we proceed to analyze the instant case.

## III.

### DISCUSSION

To resolve the primary issue raised by Commissioner Miller in this appeal, *i.e.,* whether the circuit court erred in applying the exclusionary rule, it is necessary to first consider whether there was an illegal seizure. This is so because the exclusionary rule applies to exclude evidence obtained in connection with an *illegal* seizure. *See State v. Townsend,* 186 W.Va. 283, 286, 412 S.E.2d 477, 480 (1991) ("'The general rule is that where there is an illegal seizure of property, such property cannot be introduced into evidence, and testimony may not be given in regard to the facts surrounding the seizure of the property.'" (quoting Syl. pt. 1, *State v. Davis,* 170 W.Va. 376, 294 S.E.2d 179 (1982))). Thus, if there was no illegal seizure in the instant case, then there is no need to reach any issues pertaining to the exclusionary rule.

Commissioner Miller argues that Mr. Chenoweth admitted that he was already stopped when Trooper Pauley pulled in behind him and no action on the part of Trooper Pauley caused him to stop. *See, e.g., Cain v. West Virginia Div. of Motor Vehicles,* 225 W.Va. 467, 471, 694 S.E.2d 309, 313 (2010) (stating in dicta that, "[b]ecause Mr. Cain's vehicle was parked at the time the arresting officer encountered Mr. Cain, the standard governing the lawfulness of an investigatory traffic stop is clearly inapplicable to the case before us"). Therefore, Commissioner Miller contends, at best, a seizure did not occur until Trooper Pauley turned on his police lights and pulled in behind Mr. Chenoweth. Commissioner Miller asserts that there was reasonable suspicion or probable cause for the initial seizure insofar as it appeared that Mr. Chenoweth's vehicle was illegally parked. Mr. Chenoweth's inebriation that was discovered during the course of that investigation gave Trooper Pauley the right to expand the investigation to include driving while under the influence.

In response, Mr. Chenoweth argues that West Virginia cases have consistently required that a person must be properly arrested before his driving privileges can be

suspended.[6] *Citing* Syl. pt. 3, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) (" 'Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime. . . .' Syllabus point 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994)."). Mr. Chenoweth asserts that the reliable evidence in this case establishes that Trooper Pauley lacked the requisite articulable reasonable suspicion that Mr. Chenoweth had violated, or was about to violate, the law. Mr. Chenoweth contends that, while it is permissible for the hearing examiner to consider the D.U.I. Information Sheet in lieu of the officer's appearance at the hearing, the D.U.I. Information Sheet merely creates a "rebuttable presumption" as to its accuracy and is taken as true unless "evidence is received to the contrary by way of exculpatory evidence." Mr. Chenoweth notes that Trooper Pauley did not appear at the administrative hearing, and contends that he (Mr. Chenoweth) presented sufficient evidence to refute the D.U.I. Information Sheet. In this regard, Mr. Chenoweth refers to his own testimony at the hearing, which he asserts made clear that his actions "would not have led any reasonable person to form a belief that he was under the influence of alcohol."

To analyze the preliminary issue in this case, *i.e.*, whether there was an illegal seizure, we begin by noting this Court's prior observation that

> [t]he Fourth Amendment to the United States Constitution and Article III, Section 6 of the Constitution of West Virginia protect the public from unreasonable searches and seizures by governmental officials. These protections come into play when a citizen is "seized" by a government actor such as a police officer. A person has been "seized" within the meaning of our "search and seizure" jurisprudence when, in view of the context of all the circum-

stances surrounding the incident, a reasonable person would believe that he is not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988) (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980) (opinion of Stewart, Rehnquist, J.J.)); *see also State v. Todd Andrew H.*, 196 W.Va. 615, 619–20, 474 S.E.2d 545, 549–50 (1996) (applying *Chesternut* standard to Article III, Section 6 of the Constitution of West Virginia).

*Ullom v. Miller*, 227 W.Va. 1, 7–8, 705 S.E.2d 111, 117–18 (2010) (footnotes omitted). Although,

> [n]ot all contact between a police officer and a citizen rises to the level wherein constitutional protections are implicated[,]. . . .
>
> Where an encounter rises to the level of a "search" or "seizure," both the Fourth Amendment and Article III, Section 6 require the search or seizure to be reasonable and that the governmental actor have probable cause and, absent a recognized exception, a validly issued warrant. Accordingly, searches and seizures performed without a valid warrant are presumed to be unreasonable, and will be lawful only if the search and seizure falls within a recognized exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 575–576 (1971); *accord Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (valid warrant requirement supported by probable cause "subject only to a few specifically established and well-delineated exceptions").

*Ullom*, 227 W.Va. at 8, 705 S.E.2d at 118.

■ In the instant case, the circuit court concluded that Trooper Pauley's actions were clearly a stop of Mr. Chenoweth. The circuit court further concluded that the stop was

---

6. The cases cited by Mr. Chenoweth interpret versions of W. Va.Code § 17C–5A–2 that required a commissioner to make a specific finding of "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol. . . ." W. Va.Code § 17C–

5A–2(e) (2004) (Repl.Vol.2004). The version of the statute in effect at the time relevant to this case did not include such a requirement, although the requirement has since been restored. *See supra* note 5.

illegal because Trooper Pauley lacked an "articulable reasonable suspicion" to justify the stop. We disagree. It is beyond dispute, and dictated by common sense, that a law enforcement officer may investigate illegal activity that he or she personally has observed, so long as the officer's suspicion of illegal activity is objectively reasonable. *See, e.g., State v. Sigler*, 224 W.Va. 608, 616, 687 S.E.2d 391, 399 (2009) (observing that "reasonableness requirement is an objective standard that does not permit an inquiry into the law enforcement officers' subjective motivations" (citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996))).

The D.U.I. Information Sheet prepared by Trooper Pauley clearly states that Mr. Chenoweth's vehicle was "stopped along roadway, protruding in roadway." The State notes that W. Va.Code § 17C–13–4(a) (1999) (Repl.Vol.2009) requires that "every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be so stopped or parked with the right-hand wheels of such vehicle parallel to and within eighteen inches of the right-hand curb," and makes a violation thereof a misdemeanor. Thus, Trooper Pauley's observation that Mr. Chenoweth appeared to be parked illegally was sufficient justification for Trooper Pauley to investigate. Once he approached Mr. Chenoweth and further observed the odor of alcohol, Mr. Chenoweth's glassy and bloodshot eyes, and his slow speech, Trooper Pauley was justified in expanding his investigation to include driving under the influence of alcohol.

Notably, the factual circumstances presented by this case are similar to a case decided by the Court of Appeals of New Mexico. In *New Mexico v. Finch*, No. 29,-350, 2009 WL 6567171 (N.M.Ct.App. June 29, 2009) (unpublished opinion), an officer observed a vehicle pull into a handicapped parking spot and watched as three individuals exited the vehicle. None of the individuals who exited the vehicle appeared to have any physical mobility limitations, so the officer informed them that they needed to move the vehicle. The vehicle occupants ignored the officer and he followed the driver of the automobile, Mr. Finch, into a bar. After observing a strong smell of alcohol, the officer asked Mr. Finch to exit the establishment to execute field sobriety testing. Mr. Finch ultimately was charged with non-aggravated driving under the influence of intoxicating liquor in violation of New Mexico law. Mr. Finch subsequently argued that the officer was without a "reasonable suspicion to detain him, where the officer claims to have initiated his investigation based on his suspicion that Defendant had illegally parked in a handicapped parking spot, and where Defendant's vehicle had a handicapped placard displayed." *New Mexico v. Finch*, 2009 WL 6567171, at *1. The New Mexico Court disagreed, explaining that

under these circumstances, the existence of a valid handicapped placard would not dispel the officer's reasonable belief that the driver had committed a crime. Specifically, we noted that where NMSA 1978, Section 66–3–16.1(B) (2007), makes it illegal for a person to park in a designated spot in the absence of the holder of the placard, and where the officer did not observe anyone that appeared to have physical mobility limitations, it was reasonable for the officer to believe the driver had illegally parked in the designated space, regardless of the fact that a handicapped placard was displayed in the car.

*Finch*, 2009 WL 6567171, at *1. Based upon this analysis, the court concluded that "the officer had sufficient justification to approach Defendant for further investigation." Accordingly, Mr. Finch's conviction was upheld. *New Mexico v. Finch* stands for the proposition that a parking violation provides sufficient justification to initiate an investigation.

■ Similarly, in the instant case, the evidence presented in the D.U.I. Information Sheet demonstrated that Trooper Pauley observed that Mr. Chenoweth's vehicle appeared to be illegally parked in violation of W. Va.Code § 17C–13–4(a). Mr. Chenoweth argues, however, that this evidence is insufficient in light of his own testimony that he had been legally parked, and in light of the absence of Trooper Pauley from the administrative hearing. We note that Mr. Chenoweth chose to exclude Trooper Pauley from the hearing by not subpoenaing his attend-

ance.[7] Under these circumstances, the hearing examiner was affirmatively required by statute to consider the D.U.I. Information Sheet: "[i]f the party whose license is at issue does not request the investigating officer to attend the hearing, the commissioner *shall consider the written statement,* test results and any other information submitted by the investigating officer pursuant to section one of this article in that officer's absence." W. Va.Code § 17C–5A–2(d) (2008) (Repl.Vol.2009) (emphasis added).[8] Mr. Chenoweth correctly observes that the D.U.I. Information Sheet simply created a rebuttable presumption as to its accuracy. *See Crouch v. West Virginia Div. of Motor Vehicles,* 219 W.Va. 70, 76 n. 12, 631 S.E.2d 628, 634 n. 12 (2006) ("We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy...."). However, we disagree that Mr. Chenoweth successfully challenged the accuracy of the D.U.I. Information Sheet. The only evidence to refute the D.U.I. Information Sheet was the following testimony by Mr. Chenoweth in answer to questioning by his attorney, Mr. Cosenza:

> Mr. Cosenza: Was your car against the curb when you pulled the vehicle over?
>
> Mr. Chenoweth: It was within a foot.
>
> Mr. Cosenza: Okay. Was your car in any manner protruding into the roadway of West Virginia Avenue when you pulled to the side of the curb?
>
> Mr. Chenoweth: No.

Later in the questioning, Mr. Cosenza asked Mr. Chenoweth "You were legally parked?" To which Mr. Chenoweth answered "Uh huh."

There was no evidence other than Mr. Chenoweth's self-serving testimony to establish that the vehicle was legally parked. The hearing examiner recognized that the conflict in the evidence as to whether Mr. Chenoweth

was legally parked required a credibility determination. The hearing examiner resolved this conflict in favor of Trooper Pauley. Credibility determinations are properly made by the trier of fact, in this case the administrative law judge, who has had the opportunity to observe, first hand, the demeanor of the witness. *See, e.g., State v. Guthrie,* 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). *See also Jackson v. State Farm Mut. Auto. Ins. Co.,* 215 W.Va. 634, 641, 600 S.E.2d 346, 353 (2004) (" 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]' " (quoting *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (additional citation omitted))); *Haller v. Haller,* 198 W.Va. 487, 496, 481 S.E.2d 793, 802 (1996) ("Like all triers of fact, the family law master had to balance conflicting evidence and make his ruling based on a weighing of the evidence, which necessarily involved credibility determinations."); Syl. pt. 2, *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses."). Although the hearing examiner in the instant case was deprived of observing the demeanor of Trooper Pauley, he did have the opportunity to observe Mr. Chenoweth and found Mr. Chenoweth's testimony was not reliable. In these circumstances, we find the circuit court, which was essentially sitting as an appellate court, erred in reversing the factual determinations of the administrative law judge, which were subsequently adopted by Commissioner Miller in the order under review.

Simply stated, the evidence in this case was sufficient to establish that Trooper Pauley was justified in initiating an investigation into Mr. Chenoweth's illegally parked car,

---

7. The hearing request form completed by Mr. Chenoweth specifically stated that "[t]he arresting officer will only attend the hearing if requested to do so."

8. It should be noted that this provision is included in the 2008 version of the statute that applies to the case *sub judice,* but it appears to have been omitted from later versions of this statute.

which investigation led Trooper Pauley to further suspect that Mr. Chenoweth had been driving under the influence of alcohol. Therefore, the circuit court erred in reversing Commissioner Miller's revocation order based upon its conclusion that Trooper Pauley had engaged in an illegal stop of Mr. Chenoweth.

## IV.

### CONCLUSION

For the reasons stated in the body of this opinion, we reverse the December 23, 2010, order of the Circuit Court of Wood County, and reinstate Commissioner Miller's final order revoking Mr. Chenoweth's driving privileges.

Reversed.