# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Steven O. Dale, Acting Commissioner of
the West Virginia Division of Motor Vehicles,
Petitioner Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0374** (Kanawha County 12-AA-123)

**Ryne E. Arthur,
Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the order of the circuit court entered March 5, 2013. The circuit court affirmed the decision of the Office of Administrative Hearings ("OAH") that reversed Respondent Ryne E. Arthur's driver's license revocation. Respondent, by counsel Carter Zerbe and David Pence, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 6, 2010, Trooper C.M. Thorton of the West Virginia State Police, the investigating officer in this matter, was assisting with a sobriety checkpoint on U.S. Route 60 in Jefferson, Kanawha County, West Virginia. At approximately 11:20 pm, respondent was stopped at the sobriety checkpoint. Trooper Thorton observed that respondent had the odor of alcohol on his breath, was unsteady exiting his vehicle and walking to the roadside, and had slow speech and bloodshot eyes. Respondent admitted that he "drank a couple beers and some Southern Comfort." Trooper Thorton also found a partially empty bottle of Southern Comfort in respondent's vehicle. Trooper Thorton then administered a series of field sobriety tests to respondent that he failed. Respondent was then arrested for suspicion of driving under the influence ("DUI"). A secondary chemical test showed respondent had a blood alcohol concentration of 0.143 percent.

On December 8, 2010, the DMV sent respondent an order of driver's license revocation for DUI which was to become effective on January 12, 2011. Respondent appealed his license revocation to the OAH. Respondent gave notice that the sobriety checkpoint would be challenged at the hearing.

1

On April 4, 2012, a hearing examiner conducted a final administrative hearing on respondent's challenge of the driver's license revocation. The hearing examiner stated that in accordance with West Virginia Code 29A-5-2(b), "all documents contained in the file are accepted and admitted into evidence in this case and are marked as Exhibits 1 through 13." Respondent's counsel objected to the admission of the DMV's file on the basis that the "evidence that should be addressed and entertained should be that as presented here in this proceeding." The hearing examiner noted but did not rule on this objection. At the administrative hearing, the DMV did not submit evidence regarding established guidelines for the operation of the sobriety checkpoint. Respondent did not testify at the hearing.

On September 10, 2012, the OAH entered its order reversing respondent's driver's license revocation. Thereafter, the DMV filed a motion to reconsider that decision. The OAH's denied the DMV's motion to reconsider and found:

> As previously stated in the findings of facts contained in the [OAH's] Order of September 10, 2012, the [DMV] did not introduce any evidence at the hearing to establish that the essential sobriety checkpoint procedures were followed specifically as to whether the supervisor in charge contacted the local prosecuting attorney for inclusion in checkpoint planning; the location selection of the checkpoint based upon various statistics; the safety and visibility for officers and the public – including adequate lighting, sufficient space, and an alternate route for any driver that wishes to avoid the checkpoint; and advance notice to the public (typically by media publication of the location, date and time of the checkpoint). According to W.Va. Code § 17C-5A-2(f)(2) [2010] and § 17C-5A-2(s) [2010], the December 8, 2010 Order of Revocation must be rescinded if [respondent] was not lawfully placed under arrest or lawfully taken into custody. The lawfulness of [respondent's] arrest and custody hinges on the compliance with and adherence to sobriety checkpoint operational guidelines, a subject on which the [DMV] did not offer evidence during the hearing on the merits of the case.

The DMV appealed to the Circuit Court of Kanawha County. By order entered on March 5, 2013, the circuit court affirmed the decision of the OAH. The circuit court found that the "crux of this matter concerns the legality of a sobriety checkpoint," and "no evidence regarding established guidelines for the operation of the checkpoint was presented."

The DMV appeals to this Court and requests reinstatement of the order revoking respondent's driver's license. Our standard of review in this matter is found in *Muscatell v. Cline, Commissioner,* 196 W.Va. 588, 474 S.E.2d 518 (1996), an administrative driver's license revocation case, Syllabus Point 1 of which holds:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) [concerning contested cases under the West Virginia Administrative Procedures Act] and reviews questions of law presented *de novo;* findings of fact by the

2

administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

*In accord,* Syl. Pt. 1, *Ullom v. Miller, Comm'r,* 227 W.Va. 1, 705 S.E.2d 111 (2010). Moreover, West Virginia Code 29A-5-4(g)(6) of the Administrative Procedures Act provides that a reversal is warranted when the administrative decision is arbitrary and capricious.

On appeal, the DMV contends that the circuit court should have remanded the matter for further hearing solely on the issue of the lawfulness of the sobriety checkpoint, citing *White v. Miller,* 228 W.Va. 797, 724 S.E.2d 768 (2012). In response, respondent states that this case is distinguishable from *White* because there was no evidence whatsoever to suggest that the predetermined guidelines regarding the sobriety checkpoint existed or that the officers complied with those guidelines.[1]

The DMV does not dispute the fact that respondent timely and appropriately provided advance notice of his intent to challenge the sobriety checkpoint which resulted in the stop of his vehicle. The DMV was represented by counsel and was afforded the opportunity to secure and present evidence at the administrative hearing regarding the legality of the sobriety checkpoint yet failed to do so. We therefore decline to remand this matter for further hearing.

The DMV also argues that the OAH and circuit court should have considered the evidence admitted at the hearing that showed respondent was DUI instead of excluding the same. Conversely, respondent maintains that since the DMV failed to carry its burden of proof to show that respondent was "lawfully placed under arrest" as required by West Virginia Code § 17C-5A-2(f) (2010), the analysis ends. Respondent relies on this Court's decision in *Clower v. West Virginia Department of Motor Vehicles,* 223 W.Va. 535, 678 S.E.2d 41 (2009), *superseded by statute as stated in Miller v. Chenoweth*, 229 W.Va. 114, 727 S.E.2d 658 (2012).[2]

---

[1]In *White v. Miller,* 228 W.Va. 797, 724 S.E.2d 768 (2012), both the arresting officer and the supervising officer in charge of establishing the sobriety checkpoint appeared and testified at the administrative hearing. Detailed testimony was presented outlining the manner in which the sobriety checkpoint was conducted and how it complied with the predetermined operational guidelines. Absent from the record was an actual copy of the standardized, predetermined guidelines for the checkpoint that the officers brought to the hearing but refused to produce to opposing counsel. In *White*, White's counsel requested the production of the predetermined operational guidelines for the sobriety checkpoint in order to cross-examine the officers. The hearing examiner refused to compel the officers to produce the operational guidelines. This Court ruled that the hearing examiner erred in denying White's request. We remanded the matter in *White* to allow the driver an opportunity to cross-examine the officers to determine if their testimony corresponded to the requirements of the predetermined guidelines.

[2]Our decision in *Clower v. West Virginia Department of Motor Vehicles*, 223 W.Va. 535, 544, 678 S.E.2d 41, 50 (2009), applied the 2004 version of West Virginia Code § 17C-5A-2(e) which required a specific finding of "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . . or was lawfully taken into custody for the purpose of administering a secondary test." The 2008 version of the statute did not

In its reply, the DMV urges the Court to take this opportunity to overrule *Clower*. The DMV argues that the determination of the validity of the criminal arrest should not be brought into the administrative process. We disagree. *Clower* is still persuasive authority for purposes of our analysis because the 2004 version of the statute applicable in *Clower* is the same as the 2010 version applicable herein. In *Clower* this Court found that Mr. Clower was not lawfully arrested as required by West Virginia Code § 17C-5A-2(e) (2004). We therefore did not address the evidence showing Mr. Clower had slurred speech, smelled of alcohol, failed the field sobriety tests, and had a blood alcohol content of 0.182 percent.

Our decision in this matter is controlled by the statute that requires a specific finding by the hearing examiner of "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . . or was lawfully taken into custody for the purpose of administering a secondary test." W.Va. Code § 17C-5A-2(f) (2010). We acknowledge that the administrative law governing driver's license revocation proceedings is a creature of statute, created by the Legislature. Therefore, the decision to include this requirement is within the prerogative of the Legislature, and it is not to be invaded by this Court. *See generally State ex rel. Beirne v. Smith,* 214 W.Va. 771, 775-76, 591 S.E.2d 329, 333-34 (2003).

We now proceed to address the legality of the sobriety checkpoint. "If the stop at the sobriety checkpoint was unlawful, the evidence gathered at the checkpoint may have been unlawfully obtained and, therefore, would need to be excluded from the evidence [considered]." *White v. Miller,* 228 W.Va. 797, 807, 724 S.E.2d 768, 778 (2012).[3] It is undisputed that respondent provided timely, prehearing notice that the legality of the checkpoint would be challenged at the administrative revocation hearing. DMV was, therefore, on notice to be prepared at the hearing to provide evidence concerning the manner in which the sobriety checkpoint was established and conducted.

The principal authority in this State concerning sobriety checkpoints is *Carte v. Cline,* 194 W.Va. 233, 460 S.E.2d 48 (1995). *Carte* involved a driver who was stopped at a sobriety checkpoint and arrested for operating a motor vehicle while under the influence of alcohol. Challenging the administrative revocation of his license, the driver asserted that the State Police failed to comply with standard operating procedures when conducting the checkpoint. In *Carte,* this Court upheld the constitutionality of sobriety checkpoints insofar as the checkpoints are conducted within non-intrusive, predetermined operational guidelines. In Syllabus Points 1 and 2 of *Carte* we held:

---

contain this language. *Miller v. Chenoweth,* 229 W.Va. 114, 117 n.5, 727 S.E.2d 658, 661 n.5 (2012). However, the Legislature amended the statute in 2010, and restored the language requiring a finding that the person was either lawfully arrested or lawfully taken into custody. *Id.*

[3]We note that in *White v. Miller,* 228 W.Va. 797, 807, 724 S.E.2d 768, 778 (2012), Mr. White's DUI arrest occurred on July 7, 2007. We therefore applied the version of the statute that required a specific finding of whether the driver was either lawfully arrested or lawfully taken into custody.

4

Sobriety checkpoint roadblocks are constitutional when conducted within predetermined operational guidelines which minimize the intrusion on the individual and mitigate the discretion vested in police officers at the scene.

A person who wishes to challenge official compliance with and adherence to sobriety checkpoint operational guidelines shall give written notice of that intent to the commissioner of motor vehicles prior to the administrative revocation hearing which is conducted pursuant to W.Va. Code § 17C-5A-2.

As noted above, respondent provided the required advance notice that the sobriety checkpoint would be challenged. However, the DMV failed to offer any evidence whatsoever to show that the checkpoint was established and conducted pursuant to standardized, predetermined guidelines. Instead, the record indicates that during the administrative hearing, the only witness offered by the DMV was the investigating officer, Trooper Thorton. He could not present any testimony as to what operational guidelines were followed. Therefore, we find that the OAH and the circuit court properly rescinded the order that revoked respondent's driving privileges.

Moreover, we decide this case in the full light of our recent decision in *Dale v. Odum,* __ W.Va. __, __ S.E.2d __, 2014 WL ------, slip op. (Nos. 12-1403 and 12-1509, Feb. 11, 2014). In *Odum,* we reinstated two license revocations on the basis that the OAH and the circuit court, in affirming the OAH, erroneously disregarded evidence that justified the investigatory stops of Mr. Odum's and Mr. Doyle's respective vehicles. In so holding, we ruled that the evidence in those cases established that the investigatory stops were valid, and thus, Mr. Odum and Mr. Doyle were "lawfully arrested" in accord with West Virginia Code § 17C-5A-2(f) (2010). However, in the present case, the sole basis for the stop of respondent's vehicle was the sobriety checkpoint, and the DMV introduced no evidence whatsoever to establish that the checkpoint was "conducted within predetermined operational guidelines which minimize the intrusion on the individual and mitigate the discretion vested in police officers at the scene." Syl. Pt. 1, *Carte.* Therefore, the evidence failed to establish that respondent was lawfully arrested.

For the foregoing reasons, we conclude that the circuit court did not abuse its discretion in affirming the OAH's decision. We therefore affirm the order of the Circuit Court of Kanawha County entered March 5, 2013.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**
Chief Justice Robin Jean Davis
Justice Allen H. Loughry II

5