# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles Bowland and Betty Bowland,**
**Plaintiffs Below, Petitioners**

**FILED**

**November 4, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 18-0762**  (Brooke County 14-C-105)

**Gladys Haushalter, n/k/a Gladys E. Polverini,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Charles Bowland and Betty Bowland, by counsel Lawrence L. Manypenny, appeal the July 20, 2018, order of the Circuit Court of Brooke County that determined that Respondent Gladys Haushalter, n/k/a Gladys E. Polverini, proved her counterclaim for promissory estoppel/detrimental reliance and easement by estoppel in connection with her installation of water and electrical lines through petitioners' property. Respondent, by counsel M. Eric Frankovitch and Kevin M. Pearl, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners and Respondent are adjoining landowners, the boundaries of which are undisputed. Respondent owns two parcels, which are separated by petitioners' parcels.

Prior to 2014, the water supply on respondent's residential parcel was inadequate and required that she purchase water, which was delivered to her property two times per month at a cost of $150 per delivery. Respondent would run a surface hose from the water truck over petitioners' property for the purpose of filling up a cistern that was located on respondent's property.

On April 1, 2014, respondent began installing permanent water and electrical lines running from a well that she had previously installed on her non-residential parcel to her residential property. This project required that respondent dig a trench through petitioners' property in order to install a portion of the lines. Respondent completed the project on April 8, 2014.

On July 25, 2014, petitioners filed a complaint in the Circuit Court of Brooke County requesting a writ of mandamus directing that respondent remove the water and electrical lines from

their property and restore it to its pre-April 2014 condition.[1] Petitioners also filed claims of willful trespass and fraud, the latter of which was based upon the allegation that respondent misrepresented that petitioners "had given [respondent] permission (as required by the West Virginia Statute of Frauds) to come on [petitioners'] real estate and place the electric and water line[s], when [respondent] kn[e]w her statement was without truth."

Respondent filed an answer and generally denied the allegations in the complaint. She also filed counterclaims alleging fraud/misrepresentation, promissory estoppel, action to quiet title/easement by estoppel, and abuse of process. Respondent's counterclaims stem from her contention that petitioners had given her permission to install the lines on their property. With regard to her abuse of process counterclaim, respondent alleged that petitioners initiated this action for the improper purpose of intimidating and coercing her to sell her property to them.[2]

Discovery ensued and a bench trial was conducted on March 29, 2017. In an order entered on July 20, 2018, the circuit court concluded that it was petitioners who had suggested to respondent that she should install a permanent underground waterline from her well to her cistern, "which water line would have had to traverse [petitioners'] property." Though the court acknowledged that respondent did not obtain petitioners' permission in writing, it found that respondent purchased a large amount of materials for installation of the water and electrical lines and rented a mini-excavator in order to dig the trench; that, approximately one week before beginning the project, respondent called petitioners "to so advise and left a message on [their] answering machine"[;] that, on April 1, 2014, respondent spoke with Petitioner Betty Bowland and advised her "that she was ready to start digging and inquired of any special instructions desired by [petitioners]"; and that "the digging of the trench and the installation of the electrical and water lines went on over the course of several days with no <u>affirmative</u> steps taken [by petitioners] to either stop the process or contact law enforcement."

The circuit court concluded that petitioners failed to prove their claims of willful trespass and fraud. While the court also concluded that respondent failed to prove her counterclaims of

---

[1] As a procedural matter, this case involves private citizens and, as such, a petition for a writ of mandamus was not the proper avenue for relief. In syllabus point 3 of *Hickman v. Epstein*, 192 W. Va. 42, 450 S.E.2d 406 (1994), we explained that "[e]xcept where public interests are involved, a writ of mandamus is not an available remedy between private persons to enforce a purely private right, duty, or contract." Indeed, "[t]he function of a writ of mandamus is to enforce the performance of official duties arising from the discharge of some public function, or imposed by statute." *Id.* at 42, 450 S.E.2d at 406, syl. pt. 2. *See also State ex rel. Pub. Serv. Comm'n v. Town of Fayetteville,* 212 W. Va. 427, 431, 573 S.E.2d 338, 342 (2002) ("This Court will utilize the mechanism of a writ of mandamus as extraordinary relief when a public officer or body has failed in the performance of a mandatory, non-delegable duty.").

[2] The evidence showed that counsel for petitioners left a note for respondent at her property stating, "I understand you are interested in selling your property. . . . If you are seriously interested contact me by 3:00 pm on Monday[,] July 7, 2014 . . . . Otherwise, a lawsuit will be filed after that time and date." The note was dated July 3, 2014. Petitioners instituted this action on July 25, 2014.

fraud/misrepresentation and abuse of process, it determined that respondent satisfied her burden of proving a claim for promissory estoppel/detrimental reliance. The court also found in favor of respondent in her action to quiet title and for an easement by estoppel and granted her the same. Finally, the court concluded that, although it can be reasonably inferred from the evidence that petitioners permitted respondent to install both the water and electrical lines,[3] "the parties['] discussion centered on the <u>water</u> line[,]" and, accordingly, under principles of equity, the court awarded petitioners $5,000 for the placement of the electrical lines. It is from this order that petitioners now appeal.

This Court reviews the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). Further, we have explained that

> [a]ppellate oversight is therefore deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard. If the trial court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application. Of course, if the trial court's findings of fact are not clearly erroneous and the correct legal standard is applied, its ultimate ruling will be affirmed as a matter of law.

*Phillips v. Fox*, 193 W. Va. 657, 662, 458 S.E.2d 327, 332 (1995) (footnote omitted).

It is undisputed that no valid writing exists that created an easement over petitioners' property for respondent to install water and electrical lines. This Court has declared that "[a]n easement, being an incorporeal hereditament and as such a species of real property or land, . . . is subject to the provisions of the statute governing the conveyance of lands, [West Virginia Code § 36-1-1], and the Statute of Frauds, [West Virginia Code § 36-1-3]." *Cottrell v. Nurnberger*, 131 W. Va. 391, 397, 47 S.E.2d 454, 457 (1948). West Virginia Code § 36-1-3 (1923) states:

> No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence.

---

[3] According to the record, electrical lines were needed to be installed in order to activate the water pump located on respondent's non-residential parcel.

This statute notwithstanding, an oral agreement for the use of land may result in the creation of an easement by estoppel – that is, when the party "against whose estate in land an easement is sought to be established is estopped to assert the Statute of Frauds as a defense to a verbal contract within the operation of that statute . . . ." *Cottrell*, 131 W. Va. at 400, 47 S.E.2d at 458.

On appeal, petitioners challenge the circuit court's conclusion that respondent established an easement by estoppel under the law and facts of this case. The thrust of petitioners' second, third, and fourth assignments of error[4] is that the court made incorrect factual findings based upon the evidence presented and improperly weighed the credibility of certain witnesses. Further, petitioners singularly rely on syllabus point 1 of *Cottrell* which held, in relevant part, that an "easement can not [sic] arise from an oral agreement as to which there has been no complete or part performance by the vendee or no fraud or inequitable conduct upon the part of the vendor upon which to base equitable estoppel." 131 W. Va. at 391, 47 S.E.2d at 454. Petitioners contend simply that, because the circuit court found that petitioners did not commit fraud and failed to make a finding that the parties had an express oral agreement to create an easement over petitioners' property, then the conclusion that respondent proved that she had an easement by estoppel was in error.

We disagree, as considerations of equity dictate that the statute of frauds not be applied to defeat respondent's easement. *See Holbrook v. Holbrook*, 196 W. Va. 720, 724, 474 S.E.2d 900, 904 (1996). The findings made by the circuit court in support of its conclusion that respondent had an easement by estoppel over petitioners' property are supported by the record. Respondent and her husband, Greg Polverini, testified that, prior to April of 2014, they discussed the installation of permanent water lines with petitioners. According to Mr. Polverini, petitioners were interested in running a permanent water line to their home from their nearby rental property because, like

---

[4] We note that petitioners' first purported "assignment of error" is, instead, a declaration that the circuit court "fail[ed] to consider and properly apply" the statute of frauds to the easement at issue. Petitioners' "argument" consists of a recitation of the statute and one case and lacks any discussion of either. Petitioners' intended argument is, as a result, unclear. We have explained that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.] Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health v. Robert Morris N.,* 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995). Finally, we caution that

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers,* 229 W. Va. 238, 728 S.E.2d 122 (2012) (internal quotations and citations omitted). Because petitioners failed to adequately set forth and develop this purported assignment of error, we decline to address it. *See State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

respondent, "they have issues with their well."[5] Mr. Polverini testified that petitioners wanted "to see how it worked for us . . . before they went ahead and did their[s] . . . ."

The evidence further revealed that, prior to beginning the project, respondent rented a mini-excavator and spent hundreds of dollars on supplies and that she contacted Petitioner Charles Bowland at work on the morning the project was to begin. In fact, Mr. Bowland admitted at trial that respondent called him and said, "I got the stuff. I got the equipment." Mr. Bowland then advised respondent to call his wife. Respondent testified that she spoke with Mrs. Bowland on the telephone and advised her that digging was about to begin.[6] When respondent asked Mrs. Bowland where she wanted her to dig when she got to petitioners' property line, she declined respondent's invitation to "come outside and show me" and, instead, twice instructed that the digging, "stay close to the road."

Witness Charles Haushalter, who, at respondent's request, dug the trench for the lines also testified at trial.[7] He testified that, on the night before respondent rented the mini-excavator, he heard her telephone Mrs. Bowland to ask for permission to lay the lines on petitioners' property; he testified, "I just heard her ask for permission, then – you, know, make sure it was okay and she said yeah, everything was cool." On the first day of the project, Mrs. Bowland came outside to where Mr. Haushalter was digging and, although he heard her cursing at respondent, he never heard her direct respondent to stop the project.[8] Indeed, it is clear from the record that, over the course of several days, both petitioners personally observed that a trench was being dug and that lines were being installed on their property and that both petitioners affirmatively testified that they never asked respondent to stop the project.

Petitioners' disagreement with certain of the circuit court's findings of fact stems from the court's determination that certain testimony was more credible than others. According to petitioners, their testimony established that they never agreed to allow respondent to lay water and electrical lines on their property while respondent's evidence established the opposite. It is clear that the circuit court resolved the conflicts in the evidence in favor of respondent, and our review of a cold appellate record will not result in a reversal of the court's findings. "Credibility determinations are properly made by the trier of fact, . . . who has had the opportunity to observe, first hand, the demeanor of the witness[es]." *Miller v. Chenoweth*, 229 W. Va. 114, 121, 727 S.E.2d 658, 665 (2012). *See Haller v. Haller,* 198 W. Va. 487, 496, 481 S.E.2d 793, 802

---

[5] Petitioners testified that they sometimes obtain water from a nearby church, with permission, because their water supply is inadequate at times.

[6] According to respondent, the mini-excavator was visible outside of Mrs. Bowland's window.

[7] Mr. Haushalter is respondent's former husband.

[8] Mrs. Bowland testified that she had harsh words with respondent about how long it was taking to dig the trench on her property. However, she admitted that she did not tell respondent to stop digging.

(1996) ("Like all triers of fact, the family law master had to balance conflicting evidence and make his ruling based on a weighing of the evidence, which necessarily involved credibility determinations.").

Finally, we are mindful that we review the circuit court's ultimate conclusion for abuse of discretion and underlying factual findings for clear error. *See Public Citizen,* 198 W. Va. at 331, 480 S.E.2d at 540, syl. pt. 1. We have explained that,

> "'[i]n applying the clearly erroneous standard to the findings of a [lower tribunal] sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*'" Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently if it had been the trier of fact.

*Alcan Rolled Prod. Ravenswood, LLC v. McCarthy*, 234 W. Va. 312, 320, 765 S.E.2d 201, 209 (2014) (internal citation omitted). Given all of the above, and in consideration of the unique facts of this case, we affirm the circuit court's July 20, 2018, order. [9]

Affirmed.

**ISSUED:** November 4, 2019

---

[9] To the extent petitioners also contend that the circuit court erred in concluding that they failed to prove their claims of willful trespass and fraud and that respondent presented sufficient evidence to support her claim of promissory estoppel/detrimental reliance, petitioners fail to develop these alleged errors or cite to any legal authority in support of these arguments. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, . . . and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the ... record on appeal ...' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioners' passing arguments are inadequate as they fail to comply with the administrative order and the West Virginia Rules of Appellate Procedure. Thus, we decline to address them because they were not properly developed on appeal.

6

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison