532 S.E.2d 365

**UB SERVICES, INC., Appellant,**

v.

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County, the Board of Review of the West Virginia Bureau of Employment Programs and Darrell B. Zickafoose, Appellees.**

No. 26565.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2000.

Decided June 8, 2000.

Elizabeth D. Harter, Esq., Ricklin Brown, Esq., William G. Anderson, Jr., Esq., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorneys for Appellant.

James M. Casey, Esq., Pt. Pleasant, West Virginia, Attorney for Appellee Zickafoose.

Randall S. Elkins, Esq., Charleston, West Virginia, Attorney for Appellee The Board of Review of The West Virginia Bureau of Employment Programs.

STARCHER, Justice:

This action is before this Court upon an appeal from an order of the Circuit Court of Kanawha County, entered on February 3, 1999, affirming a January 2, 1996 decision of the West Virginia Bureau of Employment Programs ("BEP") Board of Review that had affirmed a November 16, 1995 decision of an Administrative Law Judge ("ALJ") of the BEP. The Administrative Law Judge reversed the October 6, 1995 decision of the BEP Deputy which had denied unemployment compensation benefits to appellee Darrell B. Zickafoose ("Zickafoose").

The appellant, UB Services, Inc. ("UB"), argues that the BEP deputy properly denied unemployment compensation to Zickafoose after Zickafoose had been terminated from his employment for gross misconduct—the beating of a co-worker. UB contends that the decision of the ALJ to reverse the deputy, and the decisions of the BEP Board of Review and the circuit court to affirm the reversal, were improper because UB terminated Zickafoose for gross misconduct. For reasons explained in this opinion, we reverse the order of the circuit court.

I.

*Facts & Background*

The pertinent facts of this case are uncontested. Zickafoose was hired by UB in 1979 and continued in this employment until he was terminated in September of 1995. Prior to his termination, Zickafoose worked as a construction superintendent. During the course of his employment, Zickafoose developed a relationship with Ms. S., an individual who had worked for UB for more than 20 years. On September 8, 1995, Zickafoose savagely beat Ms. S. during a domestic dispute that occurred at the residence of Zickafoose. Ms. S. suffered two breaks of her pelvis, a fracture of her hip, a broken tailbone, a severely bruised sternum, and facial injuries affecting her eyesight. As a result of her injuries, Ms. S. was hospitalized for 5 days and was unable to return to work for more than 6 months.

On September 15, 1995, Zickafoose received a certified letter from UB informing him that he had been terminated for gross misconduct.

Criminal charges were brought against Zickafoose for his assault on Ms. S. As part of a plea bargain Zickafoose pled no contest on May 7, 1996, to the felony offense of unlawful assault.[1]

On September 22, 1995, 7 days after he received his discharge letter, Zickafoose filed for unemployment compensation benefits from the BEP. The deputy of the BEP denied Zickafoose unemployment compensation benefits after determining that Zickafoose had shown "an intentional and substantial disregard of his employer's interests and the employee's duties and obligations to his employer and fellow employee."

Zickafoose appealed the decision of the deputy and a hearing was conducted before an ALJ of the BEP. By order dated November 16, 1995, the ALJ reversed the decision of the deputy and held that Zickafoose was qualified for unemployment benefits because he had not been discharged for an act of misconduct arising from his employment.

UB appealed this decision to the BEP Board of Review. A hearing was conducted before the Board of Review on December 28, 1995, and by order dated January 2, 1996, the Board affirmed the decision of the ALJ.

---

1. The record does not indicate what sentence Zickafoose received for this crime.

UB appealed the decision of the Board of Review to the Circuit Court of Kanawha County. By order dated February 3, 1999, the circuit court affirmed the order of the Board of Review. UB appeals from this order.

## II.

### Discussion

■ The purpose of our unemployment compensation statutes is to "provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment." *W.Va.Code*, 21A–1–1 [1978]. In accord with this purpose, we have stated that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syllabus Point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954). However, "[t]his 'liberality' rule is not to be utilized when its application would require us to ignore the plain language of the statute." *Adkins v. Gatson*, 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994) (citation omitted).

■ Not everyone terminated from employment is qualified to receive unemployment compensation benefits. *W.Va.Code*, 21A–6–3 [1990] specifies various reasons that an employee may be wholly or partially denied unemployment compensation. *W.Va. Code*, 21A–6–3(2) provides for temporary disqualification for unemployment compensation if it is determined that the employee was discharged for misconduct, and permanent disqualification if it is determined that the employee was discharged for gross misconduct.[2]

We have previously defined gross misconduct as:

... conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations *or disregard of standards or behavior which the employer has the right to expect of his employee*, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Kirk v. Cole*, 169 W.Va. 520, 524, 288 S.E.2d 547, 550 (1982) (emphasis added), *quoting, Carter v. Michigan Employment Security Commission*, 364 Mich. 538, 111 N.W.2d 817 (1961). "Gross" is defined in *Black's Law Dictionary* 702 (6th ed.1990) as "[o]ut of all measure; beyond allowance; flagrant; shameful ... Such conduct as is not to be excused."

*W.Va.Code*, 21A–6–3(2) provides for disqualification of unemployment compensation

---

2. *W.Va.Code*, 21A–6–3(2) provides, in pertinent part, that an employee may be ineligible for unemployment compensation benefits:

(2) For the week in which he [the employee] was discharged from his most recent work for misconduct and the six weeks immediately following such week; or for the week in which he was discharged from his last thirty-day employing unit for misconduct and the six weeks immediately following such week....

If he were discharged from his most recent work for one of the following reasons, or if he were discharged from his last thirty days employing unit for one of the following reasons: *Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer; if such assault is committed at such* individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; or any other gross misconduct; he shall be and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment: Provided, That for the purpose of this subdivision the words "any other gross conduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts.

for gross misconduct and defines such conduct as:

> [m]isconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer[,] if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; *or any other gross misconduct*[.]

(Emphasis added.)

By including the phrase "or any other gross misconduct," the Legislature demonstrated its recognition that situations might arise that would not easily fit into the more specific examples of misconduct set forth in the statute. In an effort to balance the public policy of providing a measure of security for unemployed individuals in accordance with *W.Va.Code,* 21A–1–1, *supra,* against the public policy that individuals should not benefit from their own misdeeds, we think that the Legislature did not intend disqualification from unemployment compensation for off-duty gross misconduct unless the conduct or its effects had some substantial nexus to the employment such that the employee could no longer effectively perform the job for which he or she was employed.

There are not many cases that address off-duty misconduct in regard to unemployment compensation.[3] In *Johnson v. Commonwealth, Unemployment Compensation Board of Review,* 94 Pa.Cmwlth. 24, 502 A.2d 738 (1986), an employee was charged with murdering a co-worker—a woman who had been living with the employee. The murder occurred off the work premises and did not involve work-related issues, but rather arose from a personal relationship. While awaiting trial the employee sought unemployment compensation. The court held in *Johnson* that the employee had properly been denied unemployment compensation because the conduct of the employee would have a serious and disquieting effect on the other employees.

In *Muscatell v. Employment Division,* 77 Or.App. 24, 711 P.2d 192 (1985) an employee assaulted a co-worker while off-duty. The court held in *Muscatell* that disqualification from unemployment compensation was appropriate as "beating up and robbing a fellow employee, whether on the job or otherwise, was so connected with the work—because it insures an intolerable level of tension, if not downright fear, on the job[.]" 77 Or.App. at 28, 711 P.2d at 193.

In *Schmidt v. City of Duluth,* 346 N.W.2d 671 (Minn.App.1984) an animal shelter technician was convicted of second-degree assault after he and a friend became intoxicated, and fired three shots from a shotgun at a residence in order to frighten the inhabitants. The court held in *Duluth* that an employee could properly be denied unemployment compensation when, "by reason of his action, he can no longer effectively perform the services for which he was employed." *Id.* at 674. The court stated that as a shelter technician, the employee was hired to enforce laws and ordinances and that due to his criminal conduct, the employee was no longer capable of enforcing the law.

In the case before us, the conduct of Zickafoose in savagely beating a co-worker, even if it occurred off-duty, would have created such an atmosphere of fear and tension at his place of employment that he no longer would have been capable of performing his duties as a supervisor. In addition to the fear created at the work place, UB, as a self-insured company, was forced to pay the med-

---

**3.** Most cases dealing with off-duty misconduct arise from situations where an employee has taken illegal drugs and failed a subsequent drug test. *See generally National Gypsum Co. v. Employment Security Board of Review,* 244 Kan. 678, 772 P.2d 786 (1989) (absent evidence that employee's drug use had an actual affect on the job, employee was not disqualified from unemploy-ment compensation); *Glide Lumber Prod. Co. v. Employment Division,* 86 Or.App. 669, 741 P.2d 907 (1987) (use of marijuana off the job did not disqualify employee from unemployment compensation when there was no perceived impact at work). *W.Va.Code,* 21A–6–3 *supra,* directly deals with drug and alcohol use both on and off-duty.

ical bills of Ms. S., and was forced to go without her services for more than 6 months. UB also faced the threat of liability for employing an individual known to have a violent history.[4] All of these elements combined to create tension in the work area.

Zickafoose, in addition to filing for unemployment compensation, also filed a complaint in the Circuit Court of Mason County on September 16, 1997, alleging that UB had violated provisions of COBRA,[5] had violated the Americans with Disabilities Act of 1990, and had breached its employment contract with Zickafoose. The case was removed to federal court and, following a motion for summary judgment, the court entered judgment in favor of UB on the COBRA and employment contract claims. UB's alleged violation of the Americans with Disabilities Act was also dismissed for Zickafoose's failure to exhaust his administrative remedies. The United States District Court determined that for purposes of COBRA benefits, Zickafoose engaged in gross misconduct, and was properly denied the opportunity for COBRA benefits. *Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652 (S.D.W.Va.1998).

The District Court determined that the issue of off-duty gross misconduct in connection with COBRA benefits was a case of first impression. The court held that "gross misconduct for purposes of COBRA includes non-work related outrageous behavior if there is a substantial nexus between the behavior and the working environment such that the effects of the intolerable behavior extend into the employment arena." 23 F.Supp.2d at 657. The District Court determined that the assault produced not only fear and tension among other employees but it also cast serious doubt upon Zickafoose's ability to continue in his capacity to supervise.

We agree with the District Court's rationale in *Zickafoose*, and hold that unemployment compensation may properly be denied for off-duty gross misconduct if there is a substantial nexus between the gross misconduct and the work environment such that the effects of the gross misconduct extend substantially into the work area.[6]

In the case before us, the act of savagely beating a co-worker is so outrageous that it shocks the conscience and, therefore, falls under the definition of gross misconduct.[7] Additionally, such a vicious assault on a co-worker would have inherently created an atmosphere of fear and distrust on the job site.

### III.

#### *Conclusion*

Accordingly, we reverse the judgment of the Circuit Court of Kanawha County and we remand this matter to the circuit court for an order to be entered denying Zickafoose unemployment compensation.

Reversed and Remanded.

---

**4.** Allegations were made that Zickafoose had been acting irrationally and violently prior to the attack on Ms. S. Testimony was offered before the ALJ indicating that Zickafoose had chased and hit his ex-wife's automobile while in a vehicle owned by UB. There was also testimony concerning violent outbursts at work.

**5.** Consolidated Omnibus Budget Reconciliation Act 29 U.S.C. § 1161 *et seq.*

**6.** For the employee to be disqualified, the nexus to the work environment must be created by the employee's off-duty gross misconduct and should not be created by the employer. *See generally, Woo v. Putnam County Board of Education,* 202 W.Va. 409, 504 S.E.2d 644 (1998) (per curiam).

**7.** We point out that a physical altercation or fight between co-workers will not ordinarily rise to the gross misconduct standard.