IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**October 23, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1080

ALCAN ROLLED PRODUCTS RAVENSWOOD, LLC,
Respondent Below, Petitioner

v.

TERRY W. MCCARTHY,
Petitioner Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 13-AA-73

REVERSED AND REMANDED

Submitted: September 16, 2014
Filed: October 23, 2014

Ancil G. Ramey, Esq.
Nora Clevenger Price, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Attorneys for Petitioner

Thomas P. Maroney, Esq.
Patrick K. Maroney, Esq.
Maroney, Williams, Weaver &
Pancake, PLLC
Charleston, West Virginia
Attorneys for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "The findings of fact of the Board of Review of the West Virginia Department of Employment Security [now known as Workforce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

2. "For purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A-6-3, an act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A-6-3; (4) arson, theft, larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct may result in termination of employment." Syl. Pt. 4, in part, *Dailey v. Bd. of Review, W.Va. Bureau of Emp't Programs*, 214 W.Va. 419, 589 S.E.2d 797 (2003).

i

3. "Except where an employee has received a prior written warning, the phrase, 'other gross misconduct,' in West Virginia Code § 21A-6-3(2) evidences the legislature's intent to provide some element of discretion in the Board and reviewing courts, based upon the peculiar facts of each case." Syl. Pt. 5, *Dailey v. Bd. of Review, W.Va. Bureau of Emp't Programs*, 214 W.Va. 419, 589 S.E.2d 797 (2003).

4. "Where the catch-all provision of 'other gross misconduct' in West Virginia Code § 21A-6-3(2) is utilized as a basis for denial of all unemployment compensation benefits in the absence of a qualifying prior written warning, the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis." Syl. Pt. 6, *Dailey v. Bd. of Review, W.Va. Bureau of Emp't Programs*, 214 W.Va. 419, 589 S.E.2d 797 (2003).

5. Not every terminated employee is qualified to receive unemployment compensation benefits. An employee discharged for simple misconduct is partially disqualified from receiving such benefits, whereas an employee terminated for gross misconduct is wholly disqualified.

LOUGHRY, Justice:

The petitioner, Alcan Rolled Products Ravenswood, LLC ("Alcan"),[1] appeals

the Circuit Court of Kanawha County's order entered September 10, 2013, reversing the

decision of Workforce West Virginia's Board of Review ("Board"). The Board affirmed the

decision of a Workforce West Virginia administrative law judge ("ALJ"), who denied

unemployment benefits to Alcan's former employee, the respondent, Terry McCarthy ("Mr.

McCarthy"), upon finding he had been discharged for gross misconduct. Concluding that

the findings of fact of the ALJ, as adopted by the Board, were clearly wrong, the circuit court

entered an order reversing the decision of Workforce West Virginia and ruling that Mr.

McCarthy was entitled to unemployment compensation benefits. Alcan challenges the circuit

court's order, asserting that the court failed to give proper deference to the findings of fact

of the ALJ; substituted its findings of fact for those of the ALJ and the Board; and erred by

ruling that Mr. McCarthy's actions did not constitute "gross misconduct." Upon our careful

consideration of the record in this matter, the briefs and arguments of the parties, the

applicable legal authority, the appropriate standard of review, and for the reasons discussed

below, we reverse the circuit court's final order and remand this action to the circuit court

---

[1]The record reflects that during the proceedings below, Alcan was known as Constellium Rolled Products Ravenswood, LLC. On appeal, the petitioner refers to itself as Alcan.

1

with directions to reinstate the Workforce West Virginia decision finding Mr. McCarthy ineligible for unemployment compensation benefits.

## I. Factual and Procedural Background

On or about October 5, 2012, Mr. McCarthy[2] was discharged from employment with Alcan for picket line violence. The misconduct occurred on August 7, 2012, during a labor strike by Alcan's hourly workforce. Supervisory employees traveling in a four-vehicle convoy observed Mr. McCarthy throwing a "jack rock"[3] from a picket line into their lane of travel at the south "Y" intersection leading to Alcan's facility in Ravenswood, West Virginia.

Following his termination, Mr. McCarthy filed a claim for unemployment compensation benefits with the Division of Unemployment Compensation of Workforce West Virginia. He was denied benefits at all three levels of the administrative process based on the recurrent finding that Mr. McCarthy's actions, which led to his discharge from employment with Alcan, constituted gross misconduct.

---

[2]At the time of his discharge, Mr. McCarthy had worked for Alcan for eighteen years.

[3]"'Jack rocks' are sharpened, bent nails welded together such that one always points upward when the object is at rest. They are designed to damage tires." *U.S. v. Lambert*, 994 F.2d 1088, 1090 n.1 (4th Cir. 1993).

2

On October 25, 2012, the Workforce West Virginia deputy entered his decision finding that Mr. McCarthy was disqualified from receiving benefits.[4] The deputy based his decision upon Alcan's evidence that Mr. McCarthy threw a jack rock at an employee's vehicle, which the deputy found was gross misconduct. Mr. McCarthy requested an appeal of the deputy's decision, and an evidentiary hearing was held before the ALJ on December 21, 2012.[5]

During this evidentiary hearing, Mr. McCarthy testified that he did not throw the jack rock and that while he heard and saw jack rocks hit the road that morning, he did not see who threw them. Mr. McCarthy presented the testimony of a co-worker, Ed Nunn, who testified that he was with Mr. McCarthy on the picket line "most of the time;" that he did not see Mr. McCarthy throw a jack rock; and that he saw "a jack rock or two" in the roadway that day, but did not know who threw them. Mr. McCarthy also called Luke Staskal as a witness. Mr. Staskal, Alcan's Human Resource Business Partner, testified and confirmed that videos were taken of jack rocks in the roadway that day by the security company

---

[4]West Virginia Code § 21A-2-13 (2013) provides that "[f]or the original determination of claims under this chapter, the commissioner shall appoint a necessary number of deputies as his or her representatives." *See also* W.Va. Code § 21A-7-3 (2013) ("The commissioner shall appoint deputies to investigate all claims, and to hear and initially determine all claims for benefits . . . ."); W.Va. Code § 21A-7-4(a) (2013) ("A deputy shall promptly investigate all claims.").

[5]During this evidentiary hearing, both Mr. McCarthy and Alcan were represented by legal counsel.

3

employed by Alcan, but that he did not know where those videos were located. The transcript of this evidentiary hearing reflects that Mr. Staskal was never asked whether there were videos showing the specific incident involving Mr. McCarthy.

During this same evidentiary hearing, Alcan presented the testimony of several witnesses, including Tom Slone, Alcan's Manager of Environmental Health Services and Security, who investigated the incident. Mr. Slone explained that the Alcan management personnel immediately reported the incident involving Mr. McCarthy upon arriving at the Alcan plant the morning of August 7, 2012. While there were several incidents of picket line violence reported that day, Mr. Slone testified that he was personally charged with documenting this particular incident the morning it occurred. Mr. Slone authenticated his incident report, which contained his summary of the incident as described by William (Rocky) Elkins, the management employee who was driving the first vehicle in the convoy: "Turned off Rt. 2 onto the north branch of the South Y (access) to Century Road [and] observed [Mr.] McCarthy throw an object toward his vehicle, believed to be a jack rock." Mr. Slone explained that his incident report also contained signed statements from David Johnson and Jeff Wamsley, management employees who occupied the second vehicle in the convoy that morning. Mr. Wamsley's signed statement reflects that he "observed [Mr.] McCarthy toss a jack rock at Rocky's [Elkins's] back tire. I saw the jack rock bounce toward

4

the back tire. There is no question that this was a jack rock.''[6]  Similarly, Mr. Johnson's signed statement indicates that he "witnessed [Mr.] McCarthy toss a jack rock at Rocky's [Elkins's] vehicle. I confirm that this was a jack rock." Mr. Slone's incident report, as well as Alcan's Rules of Conduct[7] for the facility, were admitted into evidence by the ALJ.

In addition to their written statements, Mr. Elkins and Mr. Johnson were called as witnesses by Alcan during the administrative hearing. Mr. Elkins testified that he was driving the lead vehicle in the four-vehicle convoy carrying management employees to the Alcan plant for the first time since the labor strike began. He explained that as he was driving past the picket line, he saw Mr. McCarthy, whom he recognized from work, "stoop[] down and ma[k]e a . . . bowling motion with his arm[,]" although he did not see anything come out of Mr. McCarthy's hand. Mr. Elkins also testified that once Mr. Johnson and Mr. Wamsley arrived at the plant, he told them that Mr. McCarthy was "messing" with him by making the tossing motion at which time Mr. Johnson and Mr. Wamsley told him that Mr. McCarthy was not "acting" but had actually tossed a jack rock into the roadway.

---

[6]Mr. Wamsley's written statement was admitted into evidence as part of the incident report prepared by Mr. Slone. Mr. Wamsley did not testify at this hearing.

[7]Alcan's Rules of Conduct provide, in part: "Misconduct not specifically described in these guidelines will be handled as warranted by the circumstances of the case involved. Penalties imposed as a result of infractions of the rules may be modified by the Company when extenuating circumstances are found." Mr. Slone testified that these were extenuating circumstances because "[i]n a strike[,] the picketers are . . . causing harassment or damage to salary [sic] personnel."

5

During Mr. Johnson's testimony, he confirmed his written statement contained in the incident report, which he explained was given to Mr. Slone within thirty minutes of arriving at the plant that day. According to Mr. Johnson, he was a passenger in the vehicle being driven by Mr. Wamsley and, as the vehicle slowed to make the sharp curve at the Y intersection, he saw Mr. McCarthy toss a jack rock into the roadway from the picket line. Mr. Johnson testified that the jack rock bounced on the road between the Elkins and Wamsley vehicles and that Mr. Wamsley "swerved over" to navigate around the jack rock.[8] When asked how many other strikers were standing with Mr. McCarthy on the picket line that morning, Mr. Johnson responded, "five to six."[9]

On January 13, 2013, the ALJ entered his decision affirming the deputy's decision and finding that Mr. McCarthy had been discharged by Alcan for gross misconduct, which disqualified him from receiving unemployment compensation benefits. The ALJ found, *inter alia*, as follows:

> 4. There was a strike at the employer premises beginning August 5, 2012, due to a labor dispute.
>
> 5. On August 7, 2012, the claimant was manning the picket line at the South Y Entrance. The claimant [Mr. McCarthy] threw

---

[8]Mr. Johnson acknowledged during his testimony that he did not indicate in his signed statement that he saw the jack rock bounce.

[9]Although Mr. McCarthy testified that there were twenty to twenty-five employees picketing that morning, the record reflects that there were picketers on both sides of the Y intersection on the morning in question.

a jack rock beneath and toward a vehicle entering the employer facility.

6. There were four vehicles in a convoy transporting supervisor personnel to work at the plant during the strike. The claimant [Mr. McCarthy] threw a jack rock into the roadway as the first vehicle drove pass [sic] the South Y Intersection. The driver of the second vehicle swerved to avoid the jack rock in the roadway. The passenger in the second vehicle observed the claimant throw the jack rock into the roadway as the first car traveled past the claimant [Mr. McCarthy].

Based upon these factual findings, the ALJ concluded that Mr. McCarthy's attempt to damage property was work related as he was "attempting to discourage supervisors from traveling to work during the strike." The ALJ further found that Mr. McCarthy's attempt to damage property was in violation of the employer's policy and was a "deliberate disregard of the employer's interest and constitutes gross misconduct."

Mr. McCarthy appealed the ALJ's decision to the Board, which held a hearing on March 20, 2013.[10] In its decision dated May 23, 2013, the Board adopted the ALJ's findings of fact in their entirety and affirmed the ALJ's decision that Mr. McCarthy was discharged for an act of gross misconduct disqualifying him from unemployment benefits. Thereafter, Mr. McCarthy appealed the Board's decision to the Circuit Court of Kanawha County.

_____

[10]The hearing before the Board is not an evidentiary hearing.

7

On September 20, 2013, the circuit court, having reviewed the administrative record from Workforce West Virginia, as well as the parties' respective memoranda of law, entered an order expressing its opinion that the ALJ's findings of fact, as adopted by the Board, were clearly wrong in view of the evidence on the whole record. The circuit court found that Mr. Elkins, the driver of the first vehicle, did not observe anything come out of Mr. McCarthy's hand as he made a tossing motion; that Mr. Johnson's testimony conflicted with that of Mr. Elkins, who was in a better position to observe Mr. McCarthy; and that Mr. Johnson's view of Mr. McCarthy would have been blocked by the Elkins vehicle. The circuit court further found Mr. Johnson's testimony that the jack rock was thrown on the roadway between the Elkins and Wamsley vehicles was inconsistent with his written statement that he saw Mr. McCarthy throw the jack rock at the Elkins vehicle.[11]

Turning to Mr. McCarthy's evidence, the circuit court found that Mr. McCarthy denied throwing the jack rock and that his co-worker, Mr. Nunn, testified that he did not see Mr. McCarthy throw a jack rock. Regarding Mr. Staskal's testimony confirming

---

[11]Mr. Johnson was questioned, in part, by Mr. McCarthy's counsel, as follows:

> Q. Now, you've indicated that the jock [sic] rock that you say was thrown was between the Wamsley car and the Elkins' car; is that correct?
> A. Yes.
> Q. So the jack rock that you're saying that you saw was not thrown at the Elkins' car but was thrown at the Wamsley car?
> A. I can't answer that. . . . All I know is it was - I seen it hit the road.

8

the existence of videos showing jack rocks in the road on the day of the incident in question, the circuit court concluded that Alcan's failure to present any video evidence or to call Mr. Wamsley as a witness during the evidentiary hearing "[gave] rise to the legal principal [sic] that if called, the testimony of Wamsley would have been adverse to [Alcan][.]"[12]

The circuit court further found that the "alleged act" did not take place during the course of Mr. McCarthy's work hours nor on company property and did not result in damage to company property. The circuit court concluded that "[i]f Mr. McCarthy [were] guilty of any act, it would be littering of a public road which is not an act of gross misconduct."

Based on its findings of fact, the circuit court ruled that the "alleged misconduct" did not fall within the definition of "gross misconduct" as defined in West Virginia Code § 21A-6-3 and *Dailey v. Board of Review*, 214 W.Va. 419, 589 S.E.2d 797 (2003).[13] The circuit court found that the employer's evidence was "at best . . . contradictory and . . . [did] not rise even to the level of meeting the employer's burden of preponderance

_____

[12]*See infra* note 20.

[13]The circuit court stated: "The Supreme Court in <u>Dailey</u> is specifically holding that acts which occur off company premises and not on company time are not disqualifying acts under <u>West Virginia Code</u> § 21A-6-3." As more fully explained, *infra*, we disagree with the circuit court's conclusion in this regard.

9

of the evidence test, and falls far short of clear and convincing evidence."[14]  Reversing the

decision of  Workforce West Virginia, the circuit court ruled that Mr. McCarthy is entitled

to unemployment compensation benefits.[15]  It is from this order that Alcan appeals.

## II.  Standard of Review

In reviewing the decision of Workforce West Virginia's Board and ALJ, we

apply the same standard of review that was to be applied by the circuit court:

> The findings of fact of the Board of Review of the West
> Virginia Department of Employment Security [now known as
> Workforce West Virginia][16] are entitled to substantial deference
> unless a reviewing court believes the findings are clearly wrong.
> If the question on review is one purely of law, no deference is
> given and the standard of judicial review by the court is *de novo*.

---

[14]The circuit court's order refers to clear and convincing evidence as the employer's evidentiary burden and notes that an employee's right to earn a living is a property right.  The circuit court cites as authority *Brown v. Gobble*, 195 W.Va. 559, 466 S.E.2d 402 (1996), wherein we adopted a clear and convincing standard of proof for civil cases involving adverse possession of real property.  Obviously, the case at bar does not involve the adverse possession of real estate.  Moreover, the employer's burden of proof in this instance was by a preponderance of the evidence, as discussed *infra*.

[15]The circuit court also found that an employee has an "important property right" of working at a job "without fear of infliction of economic capital punishment where the worker has the right to strike, yet is discharged on weak, inconsistent and uncorroborated testimony." However, Mr. McCarthy was not discharged for participating in a labor strike.  The issue is whether Workforce West Virginia was correct in ruling that Mr. McCarthy was disqualified from receiving unemployment compensation benefits based on its finding that he was discharged for gross misconduct.

[16]Workforce West Virginia was previously known as the Bureau of Employment Security.  *See* W.Va. Code § 21A-l-4 (2013).

10

Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994) (footnote added.).

Accordingly, we examine the factual determination that Mr. McCarthy threw a jack rock from a picket line and into the path of moving vehicles transporting management employees to work under a clearly erroneous standard, and we examine the legal determination that such action constitutes gross misconduct under a *de novo* standard. We proceed to address the parties' arguments with these standards in mind.[17]

## III. Discussion

### A. The ALJ's Factual Findings

We first address whether the findings of fact reached by the ALJ are clearly erroneous. Alcan maintains that the circuit court failed to give the requisite deference to the administrative tribunal's findings and, instead, substituted its own findings of fact for those of the ALJ and the Board. Conversely, Mr. McCarthy asserts that the circuit court's decision was correct because Alcan failed to meet its burden of proving, by a preponderance of the

---

[17]The provisions of Article 5, Chapter 29A of the West Virginia Code, which is addressed to contested cases under the State Administrative Procedures Act [§§ 20A-1-1 to 29A-7-4 (2012 & Supp. 2014)], do not apply to Workforce West Virginia. *See* W.Va. Code § 29A-5-5 ("The provisions of this article shall not apply to . . . the Bureau of Employment Programs [now known as Workforce West Virginia] [.]"). Therefore, we apply the standard of review specific to unemployment compensation cases.

11

evidence, that Mr. McCarthy's conduct disqualified him from receiving unemployment compensation benefits.[18]

As previously discussed, Alcan's evidence included the incident report prepared by Mr. Slone, who was charged with documenting the incident that was reported soon after the supervisory employees, Mr. Elkins, Mr. Johnson and Mr. Wamsley, arrived at the Alcan plant on the morning in question. The signed statements of Mr. Wamsley and Mr. Johnson, as contained in the incident report, reflect that Mr. McCarthy was observed throwing a jack rock towards the Elkins vehicle. While Mr. Elkins testified that he did not see anything come out of Mr. McCarthy's hand, he confirmed that he saw Mr. McCarthy stoop and make a motion like he was tossing something towards the vehicle he was driving. Moreover, Mr. Johnson testified that he saw Mr. McCarthy throw the jack rock and that Mr. Wamsley, the driver of the second vehicle in the convoy in which Mr. Johnson was a passenger, swerved to miss hitting the jack rock. Mr. Johnson further testified that he had

---

[18]Alcan assigns as error the circuit court's finding that Alcan's evidence was "at best . . . contradictory and confusing and does not rise even to the level of meeting the employer's burden of preponderance of the evidence test, and falls far short of clear and convincing evidence." Alcan argues that this statement demonstrates the circuit court erroneously applied a clear and convincing evidence standard to Alcan's burden of proof. As we have previously explained, "'the burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute.' *Peery* [*v. Rutledge*], 177 W.Va. at 552, 355 S.E.2d at 45 (internal citations omitted)." *Herbert J. Thomas Mem. Hosp. v. Bd. of Review of WV Bureau of Emp't Programs*, 218 W.Va. 29, 32, 620 S.E.2d 169, 172 (2005). The circuit court's secondary reference to a clear and convincing evidentiary burden, while erroneous, is mooted by our decision herein.

12

no trouble seeing Mr. McCarthy, who was one of five to six employees on the picket line.[19]

While Mr. McCarthy denied throwing the jack rock, and Mr. Nunn testified that he did not see Mr. McCarthy throw the jack rock, Mr. Nunn also conceded that he was not beside Mr. McCarthy all of the time—just "most of the time."

Based upon our review of the record, we find that the evidence was more than sufficient for the ALJ to find that there were four vehicles in a convoy transporting supervisory personnel to work at the Alcan plant during the labor strike; that Mr. McCarthy threw a jack rock onto the roadway as the first vehicle drove past the picket line; that the driver of the second vehicle swerved to avoid the jack rock in the roadway; and that the passenger in the second vehicle observed Mr. McCarthy throw the jack rock into the roadway as the first car traveled past Mr. McCarthy. While there was conflicting evidence presented during the evidentiary hearing, the ALJ was present to assess the demeanor and credibility of witnesses, which assessment is entitled to deference:

> [T]he ALJ was in the best position to evaluate the demeanor and credibility of each witness which testified on the issue.
>
> * * * *
>
> The standard of review used by this Court on a question of fact resolved by an ALJ is necessarily one of deference. We have consistently held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a

---

[19]*See supra* note 9.

13

position to, and will not, second guess such determinations." "Further, the ALJ's credibility determinations are binding unless patently without basis in the record." *See also State v. Miller*, 197 W.Va. 588, 606, 476 S.E.2d 535, 553 (1996) ("The trial court is in the best position to judge the sincerity of a [witness]; therefore, its assessment is entitled to great weight."); *State v. Phillips*, 194 W.Va. 569, 590, 461 S.E.2d 75, 96 (1995) ("Giving deference to the trial court's determination, because it was able to observe the [witnesses'] demeanor and assess their credibility").

*Patton v. Gatson*, 207 W.Va. 168, 173-74, 530 S.E.2d 167, 172-73 (1999) (Davis, J., concurring) (internal citations omitted); *see also Bd. of Educ. v. Wirt*, 192 W.Va. 538, 579, 453 S.E.2d 402, 413 (1994) ("[W]e must afford the lower tribunal's findings great weight . . . because the factual determinations largely are based on witness credibility. Upon reviewing the evidence in its entirety, we conclude that the ALJ's findings of fact were based on a plausible view of the evidence. The ALJ conducted the hearing and observed the witnesses firsthand, so he was in the best position to make credibility determinations.").

In addition to affording deference to the ALJ on credibility determinations, a reviewing court is not permitted to decide the factual issues de novo or to reverse an ALJ's decision simply because it would have weighed the evidence differently. As we explained in *Wirt*,

> "'[i]n applying the clearly erroneous standard to the findings of a [lower tribunal] sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*.'" Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would

14

have weighed the evidence differently if it had been the trier of fact.

*Wirt*, 192 W.Va. at 578-79, 453 S.E.2d at 412-13 (footnote omitted) (internal citations omitted).

Accordingly, based upon this Court's review of the evidence, we conclude that the ALJ's findings of fact, as upheld by the Board, are not clearly erroneous, and that the circuit court committed reversible error by substituting its findings of fact for those of the ALJ.[20]

---

[20]The circuit court also found that if Alcan possessed a video depicting "Mr. McCarthy making any motion or throwing jack rocks," Alcan would have produced it. Because Alcan did not produce the video, the circuit court concluded that had Alcan called Mr. Wamsley as a witness, his testimony would have been adverse to Alcan. We first observe that Mr. Wamsley's written statement was admitted into evidence as part of the incident report prepared by Mr. Slone. *See McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 664-65, 363 S.E.2d 736, 741-42 (1987) (internal citations omitted) ("There is no presumption where there is already sufficient evidence so that [ ] [the] omitted [evidence] would be merely corroborative[.]"). Second, if Mr. McCarthy needed Mr. Wamsley's testimony, he could have obtained a subpoena from the Board to secure Mr. Wamsley's attendance at the hearing. *See* W. Va. Code §§ 21A-2-21; 21A-4-11. Third, the very foundation of the circuit court's cumulative reasoning, i.e., that Alcan would have introduced the video had it shown Mr. McCarthy throwing a jack rock, is erroneous. There was no testimony at the evidentiary hearing that there was a video that showed a jack rock being thrown in the direction of the Elkins vehicle on the morning in question. The extent of Mr. Staskal's very brief testimony was that he was aware of a video that showed that there were jack rocks in the roadway. In short, there was simply no basis for the circuit court's findings and conclusions in this regard.

15

## B. The ALJ's Finding of Gross Misconduct

The ALJ determined that Mr. McCarthy's effort to damage property was work related as it was an attempt to discourage supervisors from traveling to work during the labor strike, a violation of his employer's policy, and a deliberate disregard of the employer's interest, all of which constituted gross misconduct. Alcan specifically disputes the circuit court's finding that throwing a jack rock at a vehicle while not on company time and not on company property fails to qualify as gross misconduct. Mr. McCarthy argues that we need not reach the issue of what constitutes gross misconduct because the circuit court correctly found that the ALJ's factual findings were clearly wrong. Having determined that the ALJ's factual findings were not clearly wrong, we examine what constitutes "gross misconduct" for purposes of unemployment compensation.

The Legislature has expressly stated that an employee is wholly disqualified from receiving unemployment compensation benefits if he or she has been discharged for "gross misconduct," which it defines as the

> willful destruction of his or her employer's property; assault upon the person of his or her employer or any employee of his or her employer; if the assault is committed at the individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance . . . without a valid prescription, or being under the influence of any controlled substance . . . without a valid prescription, while at work; adulterating or otherwise manipulating a sample or specimen in order to thwart a drug or alcohol test lawfully required of an employee; refusal to submit

16

to random testing for alcohol or illegal controlled substances for employees in safety sensitive positions . . . ; arson, theft, larceny, fraud or embezzlement in connection with his or her work; or any other gross misconduct . . . Provided, That for the purpose of this subdivision, the words "any other gross misconduct" includes, but is not limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from the act or acts.

W.Va. Code § 21A-6-3(2) (2013). In *Dailey,* 214 W.Va. 419, 589 S.E.2d 797, this Court explained that its purpose was "to fashion a workable differentiation between simple misconduct and gross misconduct," and it set forth the following definition for gross misconduct, which generally tracks the statutory definition set forth above:

For purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A-6-3, an act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A-6-3; (4) arson, theft, larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct may result in termination of employment.

*Dailey,* 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 4, in part.

Upon adopting this definition of gross misconduct, the Court proceeded to explain that "[t]o the extent *UB Services* [*v. Gatson*, 207 W.Va. 365, 532 S.E.2d 365 (2000)] implemented a definition for gross misconduct inconsistent with the foregoing, it is expressly

17

overruled." *Dailey*, 214 W.Va. at 427, 589 S.E.2d at 805. Elevating this language in *Dailey*

to mean that off-duty conduct can never constitute gross misconduct,[21] the circuit court ruled

that throwing a jack rock while not on company time or premises does not fall within the

definition of gross misconduct.

Critical to this case is recognition that this Court in *Dailey* did not hold that off

premises misconduct could never be so egregious as to constitute gross misconduct. In fact,

as we explained,

> we believe that the legislature's provisions regarding gross
> misconduct can be divided into three distinct categories: (1)
> those specifically enumerated acts which shall be considered
> gross misconduct; (2) items which may be interpreted to be
> "other gross misconduct;" and (3) acts of misconduct for which
> the employee has received prior written warning that continued
> violation will result in employment termination.

*Dailey*, 214 W.Va. at 427, 589 S.E.2d at 805. Being aware that the statutory definition could

not possibly set forth every conceivable act of gross misconduct, we concluded that "[e]xcept

where an employee has received a prior written warning, the phrase, 'other gross

misconduct,' in West Virginia Code § 21A-6-3 evidences the legislature's intent *to provide*

*some element of discretion in the Board and reviewing courts, based upon the peculiar facts*

---

[21]In *UB Services,* an employee, while off-duty and removed from the employer's
premises, brutally beat a coworker, breaking her pelvis and hip and caused her to be off work
for six months due to her resultant injuries.

*of each case.*" *Dailey*, 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 5 (emphasis added).

In exercising such discretion, we cautioned that

> [w]here the catch-all provision of "other gross misconduct" in West Virginia Code § 21A-6-3 is utilized as a basis for denial of all unemployment compensation benefits in the absence of a qualifying prior written warning, the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis.

*Dailey,* 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 6. Rather than foreclosing the possibility that off-duty misconduct can constitute gross misconduct, *Dailey* instructs that we must evaluate the peculiar facts of a given case to determine whether an employee's action "rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items" constituting gross misconduct. *Id.*

The ALJ concluded that Mr. McCarthy's attempt to damage property constituted gross misconduct. This conclusion appears to be based on the statutory definition of "gross misconduct" that includes the "willful destruction" of the employer's property. It is undisputed, however, that none of the vehicles in the four-vehicle convoy were damaged by the jack rock thrown into the roadway by Mr. McCarthy.[22] Therefore, instead of relying

---

[22]It is unclear from the evidence in the record whether the subject vehicles were owned by Alcan. Assuming they were, the fact remains that none of the vehicles were damaged by Mr. McCarthy's actions.

on the issue of property damage, we turn to the "other gross misconduct" provision in West

Virginia Code § 21A-6-3(2).[23]

As indicated above, the "other gross misconduct" provision gives reviewing

courts discretion "based upon the peculiar facts of each case." *Dailey*, 214 W.Va. at 427,

589 S.E.2d at 805. Accordingly, Alcan's evidence of Mr. McCarthy's misconduct needed

to "rise[] to a level of seriousness equal to or exceeding that of the other specifically

enumerated items[.]" *Id.* Although the circuit court did not believe that throwing a jack rock

into the path of moving vehicles was serious, stating that if Mr. McCarthy were "guilty of

any act, it would be littering of a public road[,]" we strenuously disagree.

---

[23]In *U.S. Steel Mining Company, LLC v. Helton*, 219 W.Va. 1, 631 S.E.2d 559 (2005), *cert. denied,* 547 U.S. 1179 (2006), we explained that

> *[d]e novo* review on appeal means that the result and not the language used in or reasoning of the lower tribunal's decision, is at issue. A reviewing court may affirm a lower tribunal's decision on any grounds. *See GTE South, Inc. v. Morrison*, 199 F.3d 733, 742 (4th Cir.1999) ("if the administrative order reaches the correct result and can be sustained as a matter of law, we may affirm on the legal ground even though the agency relied on a different rationale").

*U.S. Steel*, 219 W.Va. at 3 n.3, 631 S.E.2d at 561 n.3.

While this Court has not previously addressed whether the utilization of a jack rock in the manner employed by Mr. McCarthy rises to the level of "other gross misconduct," other courts have ruled that throwing a jack rock towards moving vehicles is "a violent act which could have resulted in the death or injury of the occupants of the . . . vehicles[.]" *NSA v. United Steelworkers of America, AFL-CIO*, Cases 26-CA-18725, 2000 WL 33665521 (N.L.R.B. Div. of Judges); *see also Ramar Coal Co., Inc. v. Int'l Union, United Mine Workers of Am.*, 814 F.Supp. 502 (W.D.Va. 1993) (describing picket line violence as including tires being flattened by jack rocks); *Virginia Mfg. Co., Inc. v. N.L.R.B.*, Nos. 93-1824 & 93-1955, 27 F.3d 565, at *2 n.6 (Table) (4th Cir. June 29, 1994) ("serious strike misconduct" described as including "rock throwing, threats of physical harm, and attempted vandalism with 'jack rocks'."); *U.S. v. Lambert*, 994 F.2d 1088 (4th Cir. 1993) (addressing sentencing of twenty-seven year employee of Greyhound Bus Lines convicted of attempting to damage and disable motor vehicle with reckless disregard for human life where employee was found hiding under highway bridge with jack rocks in his possession during strike against his employer bus line).

Upon consideration of the particular facts of this case, we conclude that Mr. McCarthy's act of throwing a jack rock into the path of moving vehicles, as determined by the ALJ, rises to the level of seriousness equal to or exceeding those specifically enumerated acts constituting gross misconduct. W.Va. Code § 21A-6-3(2); *Dailey,* 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 4, in part. Even if Mr. McCarthy's intent was to simply discourage

21

supervisory employees from traveling to work during the labor strike, his actions were potentially deadly. Had the targeted vehicle hit the jack rock and resulted in a tire blowout, such event could have caused the vehicles in the convoy to wreck as they traveled seriatim. Further, a tire blowout could have caused the driver to lose control of his vehicle and, in turn, potentially caused serious injury either to himself, to the other employees on the picket line that day, or both. The fact that Mr. McCarthy's coworkers were spared from serious injury does not diminish the gravity of his actions. The misconduct at issue in this case is no less serious than acts that result in damage to an employer's property, constitute assault to a coworker, or involve the use of drugs or alcohol. *See id.* For the circuit court to find otherwise was in error.

> In reaching our decision, we remain mindful that
>
> > [t]he unemployment compensation program is an insurance program, and not an entitlement program, and is designed to provide "a measure of security to the families of unemployed persons" [footnote omitted] who become involuntarily unemployed through no fault of their own. "The [Act] is not intended, however, to apply to those who '*willfully contributed to the cause of their own unemployment.*'" *See Hill v. Board of Review*, 166 W.Va. 648, 651, 276 S.E.2d 805, 807 (1981) (quoting *Board of Review v. Hix*, 126 W.Va. 538, 541, 29 S.E.2d 618, 619 (1944)).

*Childress v. Muzzle*, 222 W.Va. 129, 133, 663 S.E.2d 583, 587 (2008) (emphasis added). In the case at bar, Mr. McCarthy purposefully threw a jack rock into the path of a vehicle convoy carrying management employees to work, thus, he "willfully contributed to the cause

22

of [his] own unemployment." *Id.* While "[u]nemployment compensation statutes . . . should be liberally construed to achieve the[ir] benign purposes[,]"[24] such liberal construction does not diminish our role in protecting the unemployment compensation fund against claimants who are not entitled to benefits. As we further explained in *Childress*:

> we believe that the basic policy and purpose of the [Unemployment Compensation] Act is advanced both when benefits are denied to those for whom the Act is not intended to benefit, as well as when benefits are awarded in proper cases. Additionally, we believe that the Act was clearly designed to serve not only the interest of qualifying unemployed persons, but also the general public. (footnotes omitted).

*Childress*, 222 W.Va. at 133, 663 S.E.2d at 587 (citing W.Va. Code § 21A-1-1(2), (3) and (4)). In short, the employment law of this state is clear that not every terminated employee is qualified to receive unemployment compensation benefits. An employee discharged for simple misconduct is partially disqualified from receiving such benefits, whereas an employee terminated for gross misconduct is wholly disqualified. W.Va. Code § 21A-6-3; *Dailey*, 214 W.Va. 419, 589 S.E.2d 797.

Bearing these principles in mind and following our careful review of the record, we reverse the circuit court's order and affirm the decision of Workforce West Virginia determining that Mr. McCarthy's actions constituted gross misconduct which disqualified him from receiving unemployment benefits.

---

[24]Syl. Pt. 6, in part, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954).

23

## IV. Conclusion

Based on the foregoing, we reverse the circuit court's order and remand this case to the Circuit Court of Kanawha County for reinstatement of the Workforce West Virginia decision finding Mr. McCarthy disqualified from receiving unemployment compensation benefits due to his gross misconduct.

Reversed and Remanded.