**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**WEST VIRGINIA DIVISION OF
JUSTICE AND COMMUNITY SERVICES,**
**Respondent Below, Petitioner**

**FILED**
**April 29, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 15-0221 (Kanawha County 14-AA-98)**

**GINGER MCLAUGHLIN,**
**Petitioner Below, Respondent**

**MEMORANDUM DECISION**

The petitioner, the West Virginia Division of Justice and Community Services ("DJCS"), by counsel, Celeste Webb-Barber, appeals the February 6, 2015, final order of the Circuit Court of Kanawha County reversing a decision of the Board of Review of Workforce West Virginia ("Board") that denied the respondent, Ginger McLaughlin, unemployment benefits.  In this appeal, DJCS contends that the circuit court failed to give deference to the Board's findings of fact and erroneously substituted its judgment for that of the Board in concluding that Ms. McLaughlin had not engaged in gross misconduct and, therefore, was entitled to receive unemployment benefits.  Ms. McLaughlin did not participate in this appeal.

Upon review of DJCS's arguments, the appendix record, and the pertinent authorities, we reverse the final order and remand this case to the circuit court for reinstatement of the September 15, 2014, order of the Board denying unemployment benefits to Ms. McLaughlin.  This case does not present a new or significant question of law and, therefore, satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure.  As such, it is properly disposed of through this memorandum decision.

Ms. McLaughlin was employed by DJCS as an accountant and auditor for four years, beginning on April 26, 2010.  Her work involved processing grant payments, analyzing

1

grants, requesting funds from various grants, and communicating with grantees.[1]  On January 17, 2014, Ms. McLaughlin went on unpaid leave pursuant to the Family and Medical Leave Act because she was suffering from fibromyalgia and chronic pain.  While still on medical leave, Ms. McLaughlin was arrested by the Charleston Police Department on February 18, 2014, and charged with possession of marijuana.  According to the police incident report, Ms. McLaughlin appeared to be under the influence of drugs at the time of her arrest as she was acting erratically and claiming that she was "the anti-Christ."  A witness told the police that Ms. McLaughlin tried to break into houses.  In addition, she allegedly committed battery on one of the arresting officers.  Recognizing that Ms. McLaughlin was under the influence of drugs, the police had her transported to Charleston Area Medical Center.[2]

---

[1]DJCS was created by the Legislature in 2010.

> The purpose of the division is to provide executive and administrative support to the Governor's Committee on Crime Delinquency and Correction in the coordination of planning for the criminal justice system, to administer federal and state grant programs assigned to it by the actions of the Governor or Legislature and to perform such other duties as the Legislature may from time to time assign to the division.  The division is the designated staffing agency for the Governor's Committee on Crime, Delinquency and Correction, and all of its subcommittees.  The division may apply for grants and other funding from federal or state programs, foundations, corporations and organizations which funding is consistent with its responsibilities and the purposes assigned to it or the subcommittees it staffs.  The Division of Justice and Community Services is hereby designated as the state administrative agency responsible for criminal justice and juvenile justice systems, and various component agencies of state and local government, for the planning and development of state programs and grants which may be funded by federal, state or other allocations in the areas of community corrections, law-enforcement training and compliance, sexual assault forensic examinations, victim services and juvenile justice.

W.Va. Code § 15-9A-2 (2014 & Supp. 2015).

[2]The police report indicates that the marijuana was found in a bag inside of Ms. McLaughlin's purse.  The report also states that although Ms. McLaughlin committed battery

On April 7, 2014, Ms. McLaughlin contacted the deputy director for DJCS and indicated that she was ready, able, and willing to return to work from her unpaid medical leave. Soon thereafter, she was given notice that her employment was being terminated because of the February 18, 2014, incident.[3] DJCS advised Ms. McLaughlin that she had violated its Conduct Policy, which provides, in pertinent part:

> Employees are expected to observe a standard of conduct which will not reflect discredit on the abilities and integrity of DJCS. Employees shall not engage in activities that would tend to disrupt, diminish, or otherwise jeopardize public trust and fidelity in the Division, or create suspicion with reference to the Division's capability in discharging its duties and responsibilities.

Subsequent to her termination, Ms. McLaughlin applied for unemployment benefits and DJCS objected. The matter came before a deputy of Workforce West Virginia, who denied Ms. McLaughlin's application for unemployment benefits. The deputy found that Ms. McLaughlin's actions, which led to discharge from her employment, constituted "other gross misconduct" as set forth in West Virginia Code § 21A-6-3(2) (2013),[4]

---

on an officer, she was not charged with that offense "due to her condition."

[3]Ms. McLaughlin's termination became effective on April 22, 2014. At that time, the marijuana possession charge was still pending.

[4]West Virginia Code § 21A-6-3(2) provides that an individual is disqualified for unemployment benefits

> [i]f he or she were discharged from his or her most recent work for one of the following reasons, or if he or she were discharged from his or her last thirty days employing unit for one of the following reasons: Gross misconduct consisting of willful destruction of his or her employer's property; assault upon the person of his or her employer or any employee of his or her employer; if the assault is committed at the individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, as defined in chapter sixty-a [§§ 60A-1-101 et seq.] of this code without a valid prescription, or being under the

3

disqualifying her for unemployment benefits. Ms. McLaughlin appealed that decision, and a hearing was held by an administrative law judge ("ALJ") of the Board on June 16, 2014. Following the hearing, the ALJ affirmed the deputy's decision, stating,

> The claimant was on approved FMLA medical leave from January 17, 2014 to April 7, 2014, when the claimant abused drugs and was involved in criminal activity [on] February 18, 2014, which resulted in the claimant's arrest and charge for possession of marijuana. The police report narrative indicates the claimant attempted to assault and batter one of the arresting officers. The claimant emailed Jeff Estep, Chief Deputy Director [of DJCS] March 28, 2014 which email provided "the wreckage I've created during active addiction must be addressed." And the email continued "I am terribly ashamed of anything I did that threatened our reputation." The claimant['s] criminal behavior [on] February 18, 2014 violated the employer['s] policy. Considering the nature of the employer['s] business and the claimant's position as an accountant and auditor, there is a nexus between the claimant's criminal activity and her employment. The claimant's drug abuse and criminal activity is gross misconduct. Therefore, it is held that the claimant was discharged for an act of gross misconduct. The claimant is disqualified.

_____

influence of any controlled substance, as defined in said chapter without a valid prescription, while at work; adulterating or otherwise manipulating a sample or specimen in order to thwart a drug or alcohol test lawfully required of an employee; refusal to submit to random testing for alcohol or illegal controlled substances for employees in safety sensitive positions as defined in section two [§ 21-1D-2], article one-d, chapter twenty-one of this code; arson, theft, larceny, fraud or embezzlement in connection with his or her work; or *any other gross misconduct . . . Provided, That for the purpose of this subdivision, the words "any other gross misconduct" includes, but is not limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from the act or acts.* (emphasis supplied)

4

On September 15, 2014, the Board summarily affirmed the ALJ's decision, adopting his findings of fact and conclusions of law. Ms. McLaughlin appealed that decision to the Circuit Court of Kanawha County.

On February 6, 2015, the circuit court entered its final order reversing the decision of the Board, concluding that the evidence in the record did not support the Board's findings of fact and that Ms. McLaughlin had not engaged in "other gross misconduct" as set forth in West Virginia Code § 21A-6-3(2). The circuit court ordered that Ms. McLaughlin be paid unemployment benefits beginning on the date of her termination from employment. Thereafter, DJCS filed this appeal.

The standard for reviewing a decision of Workforce West Virginia is set forth in syllabus point three of *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994), which provides:

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security [now known as Workforce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

In this appeal, DJCS contends that the circuit court failed to give deference to the Board's findings of fact and erroneously substituted its judgment for that of the Board in concluding that the actions of Ms. McLaughlin did not constitute "other gross misconduct," as set forth in West Virginia Code § 21A-6-3(2).

With regard to the Board's findings of fact, the circuit court concluded the evidence did not establish that Ms. McLaughlin had engaged in criminal activity and drug abuse. Focusing upon the fact that Ms. McLaughlin had not been convicted of any offense when her employment was terminated, the circuit court found that "the ALJ's decision in finding that the allegations against [Ms. McLaughlin] amount to criminal activity, is therefore reversible error as a matter of law."[5] The record shows, however, that Ms.

---

[5]The circuit court also found that the ALJ committed reversible error by relying upon hearsay evidence, namely the Charleston Police Department Incident Report. West Virginia Code § 29A-5-2(a) (2015) provides, in pertinent part:

> The rules of evidence as applied in civil cases in the circuit

McLaughlin admitted to the director of DJCS that she had abused drugs. Moreover, Ms. McLaughlin did not dispute the fact that she had been arrested, and the circumstances surrounding that arrest, as described in the police report, clearly support a finding that Ms. McLaughlin was engaging in criminal activity and drug abuse. Importantly, the record reflects that Ms. McLaughlin's employment was not terminated based on the conclusion that she had committed a crime. Rather, it was determined that Ms. McLaughlin's conduct at the time of her arrest violated the DJCS Employee Conduct Policy as it disrupted, diminished, or otherwise jeopardized public trust and fidelity in DJCS.

We have explained that

"'[i]n applying the clearly erroneous standard to the findings of a [lower tribunal] sitting without a jury, appellate courts must

_____

courts of this state shall be followed. *When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.* (emphasis supplied)

West Virginia Code § 29A-5-2(b) further states:

All evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

Here, the police incident report was in DJCS's possession and was offered as evidence to support its position that Ms. McLaughlin had engaged in gross misconduct. As such, it was properly considered by the ALJ. *See* Syl. Pt. 3, *Crouch v. West Virginia Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006) ("In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W.Va. Code § 17C-5A-1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W.Va. Code § 29A-5-2(b) (1964) (Repl.Vol.2002).").

6

constantly have in mind that their function is not to decide factual issues de novo.'" Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently if it had been the trier of fact.

*Board of Education v. Wirt*, 192 W.Va. 568, 579, 453 S.E.2d 402, 413 (1994) (footnote and internal citations omitted). Upon review of the evidence, we conclude that the ALJ's finding that Ms. McLaughlin engaged in criminal activity and drug abuse, as upheld by the Board, was not clearly erroneous, and that the circuit court simply substituted its judgment in concluding otherwise.

We further find that the circuit court erroneously substituted its judgment for that of the Board in concluding that Ms. McLaughlin's conduct on February 18, 2014, did not rise to the level of "gross misconduct." This Court has held that

[w]here the catch-all provision of "other gross misconduct" in West Virginia Code § 21A-6-3(2) is utilized as a basis for denial of all unemployment compensation benefits in the absence of a qualifying prior written warning, the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis.

Syl. Pt. 6, *Dailey v. Bd. of Review, W.Va. Bureau of Emp't Programs*, 214 W.Va. 419, 589 S.E.2d 797 (2003). The circuit court determined that the alleged drug abuse and marijuana possession while on medical leave were not as serious as the specifically enumerated acts in West Virginia Code § 21A-6-3(2) because the conduct had not occurred in the workplace and, therefore, could not be considered gross misconduct. However, we have expressly noted that "*Dailey* did not hold that off premises misconduct could never be so egregious as to constitute gross misconduct." *Alcan Rolled Products Ravenswood, LLC v. McCarthy*, 234 W.Va. 312, 321, 765 S.E.2d 201, 210 (2014). In fact, we observed in *Dailey* that "[e]xcept where an employee has received a prior written warning, the phrase 'other gross misconduct' in West Virginia Code § 21A-6-3(2) evidences the legislature's intent to provide some element of discretion in the Board and reviewing courts, based upon the peculiar facts of each case." *Dailey*, 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 5. Here, it was Ms. McLaughlin's actions on the night of February 18, 2014, combined with the nature of her

employment, that caused the Board to conclude that she had engaged in gross misconduct. As noted, Ms. McLaughlin was employed by a state agency that has a close relationship with a variety of law enforcement authorities. Her duties as an accountant and auditor required her to have contact with those law enforcement authorities. Consequently, her arrest had the potential to have a direct impact on the credibility and reputation of DJCS. Certainly, when an employee of an agency directly involved with law enforcement publicly engages in criminal activity and abuses illegal substances, it tends to discredit that agency and create a suspicion regarding the agency's capability in discharging its duties and responsibilities.

Accordingly, for the reasons above, the final order of the Circuit Court of Kanawha County entered on February 6, 2015, is reversed, and this case is remanded to the circuit court for reinstatement of the September 15, 2014, decision of the Board finding Ms. McLaughlin disqualified from receiving unemployment benefits due to her gross misconduct.

Reversed and remanded.

**ISSUED: April 29, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II